SCHOTT, Judge.
Defendants have appealed from a judgment in plaintiff’s favor for damages he sustained in an automobile-bus collision. At issue are liability and the quantum of general damages.
LIABILITY
Just prior to the accident plaintiff was driving his automobile in a westerly direction on Robert E. Lee Boulevard in the City of New Orleans. After' crossing a bridge, he traversed the intersection with Wisner Boulevard, proceeded along Robert E. Lee and struck defendants’ bus which was turning into an auxiliary crossing in the neutral ground of Robert E. Lee. The bus, which had been parked in a terminal on the north side of Robert E. Lee, left the terminal, crossed the westbound side of Robert E. Lee and was in the auxiliary crossing to turn around and proceed east on Robert E. Lee.
Pertinent measurements in the vicinity are as follows: The westbound side of Robert E. Lee was 25 feet wide and the neutral ground, 45 feet 4 inches. The path traversed by plaintiff from the center of the bridge to the beginning of Wisner measured 158 feet, Wisner measured 59 feet wide, and the beginning of the bus terminal cut toward the north from the westbound lanes of Robert E. Lee was 100 feet from Wisner. This terminal was wide enough for a bus to park outside of the 25 feet of wide roadway of Robert E. Lee, and it measured 131 feet long. The west end of the terminal was 47 feet from the beginning of the auxiliary crossing leading to the eastbound side of Robert E. Lee.
Plaintiff testified: The light at Wisner was green after he crossed the bridge, and while he was in process of crossing Wisner he saw the bus starting to move. As he approached the bus it moved into the right lane whereupon, thinking the bus would proceed west along Robert E. Lee, plaintiff moved from the right to the left westbound lane. However, the bus cut over in front of him into the left lane. He immediately applied his brakes and tried to turn his steering wheel to the right but his automobile skidded into the rear of the bus, which was still projecting out from the auxiliary crossing.
Defendant driver testified: He saw plaintiff approaching from his rear at the top of the bridge when he began to move out of the bus terminal but the semaphore signal at Wisner and Robert E. Lee at the time was on caution for plaintiff. He therefore assumed plaintiff would stop at the intersection. He never again saw plaintiff.
The trial judge gave no reasons for judgment but obviously found that defendant was negligent and that defendants failed to prove that plaintiff was contributorily negligent.
*1298 The negligence of the defendant is not a serious issue. His own testimony to the effect that he crossed over the two moving lanes of Robert E. Lee and never saw plaintiff’s automobile from the time he left the terminal until the time of the collision convicts him of negligence in failing to see what he should have seen, especially under circumstances of making a left turn from the right side of the road.
However, the main thrust of defendants’ argument is that plaintiff was con-tributorily negligent in failing to keep his automobile under control. Defendants contend that the above dimensions at the scene of the accident demonstrate clearly that plaintiff had room to avoid the accident and failed to do so. They argue that the bus began to move directly across the westbound side of Robert E. Lee into the auxiliary crossing at a time when plaintiff was well over 300 feet away. But this argument rests primarily on the testimony of the bus driver, to some extent corroborated by another driver who was on the scene. The trial judge apparently resolved the conflict between the testimony of plaintiff and that of defendants’ witnesses against the latter and we do not substitute our judgment for his in this regard.
Accepting plaintiff’s testimony as true, the bus moved slowly forward within the terminal, then moved into the right lane, giving plaintiff the impression that the bus was going to proceed ahead. Without giving any left turn signals the bus then turned into the left lane, right in plaintiff’s path, when it was too late for plaintiff to avoid the collision.
On this basis the trial court’s judgment on liability must be affirmed.
QUANTUM
This accident happened on November 8, 1974, and the case was tried in June, 1976. On the day after the accident plaintiff saw his family physician. He was complaining especially of his back and neck as well as his knee. Treatment over the next two months consisted of therapy and medication, but by January his back and neck had gotten worse. It was interfering with his work as a part-time truck driver and warehouseman and prevented him from sleeping well. He was referred to Dr. Kenneth Vogel, a neurosurgeon, whom he saw on January 30.
Dr. Vogel initially diagnosed a chronic cervical strain and recommended massage to the cervical region. In spite of this conservative treatment plaintiff continued to have difficulty in his neck and shoulder. In March, 1975, Dr. Vogel found spasm along the midline right paraspinus muscle and diagnosed facet irritation. He recommended cervical traction for plaintiff. When Dr. Vogel next saw plaintiff in May, 1975, he had been receiving physiotherapy and traction, he complained of recurrent cervical and right arm pain with numbness, and he was found to have muscle spasm as well as brachial plexus tenderness. Dr. Vo-gel saw plaintiff in October and December, 1975, when he continued to have cervical and right shoulder pain with spasm along the right paraspinus muscle. The last time Dr. Vogel saw him was two weeks before trial when plaintiff still had mild limitation of motion and some cervical and interscapu-lar pain. He was advised to continue with conservative care consisting of massage and medication. At that time Dr. Vogel concluded that plaintiff’s injury was “under satisfactory control,” and he gave the following prognosis:
“Two sided. I don’t believe he has a lesion or has a problem which is going to require surgery. I believe he would be able to continue working, continue performing the normal life-style duties that he is now performing. It’s not good. I am not that optimistic in that his history is old. He should have been asymptomatic within two or three months of his injury if we are going to have a complete resolution. Therefore, it’s good and bad.”
The doctor declined to state a percentage disability for plaintiff but he did say that he would advise plaintiff to avoid activities which included excessive lifting, pushing or pulling at extreme levels.
*1299 Plaintiff testified that he was still taking medication for his pain and discomfort at the time of the trial. With his injury he is no longer active in sports as he was before the accident because this causes pain in his arm and back.
The trial judge’s award of $25,000 for this injury which persisted until the time of the trial, over 19 months after the accident and which was probably going to persist for an indefinite length of time in the future according to Dr. Vogel, is not beyond the discretion of the trial judge. LSA-C.C. 1934(3) and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.