372 So.2d 606 (1979)
Andree DiVINCENTI
v.
Patricia K. DESFORGES et al.
No. 9823.
Court of Appeal of Louisiana, Fourth Circuit.
May 4, 1979.
Rehearing Denied July 12, 1979.
*607 Pitard, Pitard & Porobil, Robert F. Pitard, New Orleans, for plaintiff-appellee.
Ronald L. Ronzello, Metairie, for defendants-appellants.
Before SAMUEL, REDMANN, LEMMON, STOULIG and BEER, JJ.
STOULIG, Judge.
Defendants, Patricia Desforges and her liability insurer, Firemen's Insurance Co. of Newark, New Jersey, have appealed a judgment awarding plaintiff, Andree DiVincenti, $12,500 damages she incurred as the result of an accident of April 16, 1976. At the time of the accident, plaintiff was a guest passenger in a vehicle driven by Patricia Desforges that rear-ended another vehicle. Liability was stipulated; therefore, the only question before the trial court was what damages plaintiff sustained.
The trial court concluded plaintiff suffered "* * * a moderate to severe lumbosacral strain which was superimposed upon and further aggravated a pre-existing degenerative disc condition (at L-5-S-1)."
The medical testimony supports this conclusion. Dr. John Jackson, a neurological surgeon, diagnosed a disc condition and his testimony, together with that of Dr. Roy Clay, her treating physician, are sufficient to support her claim that the automobile accident caused a severe aggravation of a back injury from which she was almost asymptomatic when she was reinjured as a guest passenger.
Appellants argue appellee exaggerated the extent of her injury, and the fact that she took an automobile trip to Mexico in August 1976 establishes plaintiff was not suffering the excruciating pain which she claims stemmed from the April injury. When questioned on this point, Dr. Jackson said that an automobile trip of this nature would not be painful in her condition provided she traveled in a reclining position. Plaintiff testified that she made the trip propped on pillows on the back seat of a large passenger car. It is apparent from both medical witnesses' testimony that they did not question the sincerity of her complaints of pain.
With respect to special damages, appellants argue plaintiff failed to establish her lost wages by a preponderance of the evidence. Prior to her accident, plaintiff had been employed by defendant Patricia Desforges to manage a dress shop, and both testified that because of her back pain the hours appellee worked diminished after the accident. From the testimony it is apparent that plaintiff's time cards could have been produced to establish the exact amount of lost wages. Although Ms. Desforges, after testifying, stated she would bring the records to court later that day, they were never produced. She stated plaintiff told her to forget the records.
According to plaintiff she had worked for $650 per month at the Lazy Bug shop and even before the accident, this was changed to an hourly rate. Had the records been produced, it would appear a judgment for the lost wages together with the general damages should have been significantly higher. In lumping together both general and special damages in the $12,500 award, we cannot say the trial court abused its discretion because the record clearly establishes there actually was a wage loss, and the trial judge found as a fact plaintiff suffered a painful back injury as a result of the accident.
The principle of appellate review enunciated in Canter v. Koehring Company, 283 So.2d 716 (La.1973), as further defined in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), states the basic premise we follow in reviewing a judgment based on factual conclusions, namely, credibility findings *608 supported by the record should not be disturbed on appeal. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), further stresses that quantum amendments on the appellate level are limited to cases where the trial court abuses the "much discretion" vested in it by C.C. art. 1934.
The award of $12,500 is reasonable in this case. That plaintiff had a pre-existing back injury is of no moment, because the medical evidence shows her problem was almost in remission when the accident occurred. Immediately after this her symptomatology became acute. Her treating physician testified the accident was the cause of the re-injury, and the neurosurgeon affirmed the type of trauma she suffered could produce these symptoms. In Taylor v. Rome, 303 So.2d 844 (La.App. 1st Cir. 1974), the court noted that the tort-feasor takes the victim as he finds him and a pre-existing injury will not bar recovery. Once plaintiff establishes the trauma of the accident activated or aggravated the pre-existing ailment, she is entitled to damages for the re-injury.
For the reasons assigned, the judgment appealed from is affirmed at appellants' cost.
AFFIRMED.
LEMMON, J., concurs with written reasons.
REDMANN, J., dissents with written reasons.
BEER, J., dissents with written reasons.
LEMMON, Judge, concurs and assigns reasons.
The award is clearly within the trial court's range of discretion if the evidence supports the court's factual determination that the April, 1976 accident aggravated the pre-existing condition.
Dr. Clay's testimony at trial strongly supports this finding.[1] Although the hospital (at which Dr. Clay is on the full-time staff) had lost plaintiff's medical records, he testified that he began treating her in January, 1976 for complaints of back tenderness after she had lifted some boxes; that by March she "was considerably improved" although not completely asymptomatic; and that after the April 16, 1976 automobile accident she "immediately got worse" and thereafter "showed no improvement at all" until he referred her to the neurosurgeon who diagnosed a bulged disc in October, 1976. He further stated, upon questioning as to the significant legal issue of causation, that he remembered the worsening after the April accident because (1) just the week before another patient who was "getting better" also had an accidental setback and (2) he referred plaintiff to an orthopedist for the first time after the April accident.
Dr. Clay's strong testimony on the issue of causation is somewhat weakened by his letter of referral to the neurosurgeon, in that the letter does not mention a second accident. However, while the letter is detailed as to the initial history and examination, it described the course of treatment thereafter only in broad terms. I would therefore decline to infer from the doctor's failure to mention the accident in the letter that he falsified his trial testimony, which convincingly supports a finding of causation.
Dr. Clay's letter was not discovered by defendants' counsel until the neurosurgeon's deposition, which was taken after the close of evidence. Defendants then filed a motion to reopen the case in order to have an opportunity to confront Dr. Clay with this letter. Since at trial Dr. Clay did not have any notes and testified only from memory, it would have been reasonable to grant the motion in fairness to defendants. However, in view of Dr. Clay's strong testimony and of the fact that his letter was before the trial judge when he considered the motion to reopen, I cannot say that the trial judge acted so unreasonably in denying the motion as to constitute an abuse of discretion.
*609 REDMANN, Judge, dissenting.
The impact was light when defendants' insured automobile rear-ended an old pickup truck, knocking down one end of the truck's bumper (apparently already loose, because its owner tied it up with a piece of rope and, plaintiff says, told defendant driver to forget it). The only evidence that supports plaintiff's claim that the accident exacerbated her pre-existing back problem was the testimony of Dr. Roy G. Clay.
Dr. Clay testified that his medical records on plaintiff had been lost at the United States Public Health Service Hospital, but that he remembered that, although he had been treating her back problem since January 1976, she had never had the objective sign of muscle spasm until after the April 1976 automobile accident. The February 14, 1978 trial was continued to allow plaintiff to take the deposition of Dr. John D. Jackson, a neurosurgeon prevented by emergency from testifying at the trial. Dr. Jackson's deposition was taken March 9, and on that date Dr. Jackson produced from his records a letter from Dr. Clay written October 5, 1976 to request consultation on plaintiff.
Dr. Clay's October 1976 letter strongly suggests that in October 1976 Dr. Clay attributed no significance to the April 1976 accident and did not find muscle spasm after that accident: that plaintiff's back pains were unchanged since January 1976. The two-page single-spaced letter gives a proliferation of details of medical history and treatment, including two orthopedic consultations after February and then two instances of injecting a tender area with xylocaine and hydrocortisone. The letter notes that the reinjection "caused an exacerbation of her pain" and then notes August electromyelograms with no reference to anything in April (unless the consultations or injections then occurred). The letter mentions a box-lifting incident at the onset but never mentions the April automobile accident or any "exacerbation" arising because of such an incident as part of a medical history. Having earlier noted "no muscle spasm" on the first visit, the letter never mentions any later muscle spasm, although it lists all laboratory test data. The letter concludes:
So in summary, we have a patient who has had persistent back pains since January of 1976 with some occasional radiation into the right leg but no specific neurological findings. She has been seen by two different orthopedic consultants who have found no evidence of mechanical back disease. She has been checked by her gynecologist who has found no evidence of a pelvic etiology for the pain. She has continued to have difficulty in spite of a conservative regimen. I have told the patient that I am unable to make a firm diagnosis and that I am unable to find a neurological cause for her disease but felt that we should obtain a neurological consultation.
In the absence of an explanation of the prior inconsistent statements expressed and implied in that letter, Dr. Clay's medical testimony from memory, after reciting the loss of his records, cannot fairly be accepted as corroborating anything other than that plaintiff did mention the accident to him (although his letter's silence on the accident indicates that it was of no significance to Dr. Clay).
There is no explanation of Dr. Clay's letter because plaintiff chose not to give any, despite her apparent recognition during Dr. Jackson's deposition of the damaging nature of the letter. It would nevertheless be fair to remand to allow plaintiff, even now, to offer Dr. Clay's explanation of the letter. That should be the disposition of this appeal.
(Alternatively, accepting that plaintiff did experience enough discomfort from the April accident to cause her to mention it to her doctor, but noting that the doctor deemed it so inconsequential as not to merit mention in a detailed history intended to explain the need for a neurological consultation, we should conclude that plaintiff's testimony of serious injury from the automobile accident is inconsistent with her treating physician's ignoring the accident, and is at best uncorroborated except to the *610 extent that the doctor's remembering but ignoring the accident shows that the accident must have caused but insignificant and therefore minimal and transitory pain. We could on this basis reduce to $500, the maximum allowable under La.C.C. 2277 in the absence of any corroborative evidence.)
BEER, Judge, dissenting.
DiVincenti's suit for damages in the amount of $565,000.00 was predicated on the contention that a rear-end collision activated or aggravated a preexisting back ailment.
She seeks to support her claim by the expert medical testimony of Drs. Clay and Jackson. Dr. Clay testified at the trial, and Dr. Jackson's deposition was taken after the trial pursuant to agreement of counsel and, thereafter, submitted to the trial judge.
My review of the above, coupled with a review of DiVincenti's testimony at the trial and at a pretrial deposition which forms part of the record before us, convinces me that the trial court was manifestly in error in its award of $12,500.00.
I find little support in this record for the award of any specific amount of special damages and even less for a general damage award at or near the amount of the judgment.
It will serve no useful purpose for me to elaborate beyond this observation: I believe that DiVincenti's claims are grossly exaggerated. I believe the medical testimony is inconsistent, inconclusive and, in some instances, contradictory.
Accordingly, I respectfully dissent.
BEER, Judge, dissenting from the denial of the application for rehearing.
I would grant a rehearing for the purpose of considering a marked reduction in the quantum award. I believe that the award is excessive and unsupported by credible evidence. In my view, the result reached in this case flies in the face of the basic premise that the plaintiff has the burden of proof.
NOTES
[1] Plaintiff's testimony (although her complaints are exaggerated when compared to the neurosurgeon's comments) also supports this finding.