STOULIG, Judge.
Plaintiff, Carroll J. Pitre, has appealed a judgment dismissing his suit for damages sustained when his automobile was struck by two wheels which became detached from a sweeper as both vehicles were proceeding on the expressway approach to the Greater New Orleans Bridge. Named defendants *332 were Robert J. Bourgeois; Perrin Rittiner, doing business as Rittiner Equipment Company; and the Travelers Insurance Company, the driver, owner, and insurer of the owner respectively. Also joined as third party defendants in the third party petition of Bourgeois, Rittiner, and Travelers and as original defendants in the amended pleadings of the plaintiff were Crescent Ford Truck Sales, Inc., seller of the chassis on which the sweeper was mounted; Ford Motor Company, the manufacturer; and Goodyear Tire and Rubber Company, the vendor of the tires which it installed on the sweeper within weeks of the accident.
On January 2,1974, two right rear wheels of the sweeper came off without warning, rolling backward and striking the Pitre vehicle following it. Plaintiff lost control of his car and struck the bridge guard railing.
Although Pitre’s freedom from fault is beyond dispute, the issue before us is whether one or a combination of any of the defendants was guilty of actionable negligence. The fact that two wheels came off a truck chassis as it was being driven in a manner for which it was manufactured indicates that somewhere along the line there was a breach of the duty of care owed to motorists who would be on the road while the sweeper was being operated.
The evidence establishes the chassis was a 1974 one-ton F350 Ford truck, purchased new by Rittiner on September 25, 1973, to which Rittiner’s personnel attached a Timco air vacuum sweeper. The sweeper had a capacity load of between 1000 and 1200 pounds of debris. On December 18, 1973, Goodyear Tire and Rubber Company installed four steel belted radial tires on the rear dual wheels of the sweeper because Rittiner’s personnel thought this type of tire would be less susceptible to flats than the original tires on the truck at the time of purchase. Metallurgical expert Oscar Al-britton testified the wheels came off because some of the lugs were not tight.
The record is clear that the four rear wheels, mounted with the new steel belted radials, were installed by Goodyear on the date of purchase, December 18. However, the evidence is hazy as to whether any of the Rittiner personnel removed any of these tires from the truck after the Goodyear installation. Perrin Rittiner, owner of the business, testified that because of the use to which the machine is put, i. e. sweeping up debris and glass, the machines have many flat tires. When questioned if there was any occasion to remove the rear wheels between the time of the Goodyear installation and the time of the accident, Rittiner admitted he did not know. Glen Faust, Rittiner’s shop foreman, first stated that the Rittiner personnel never perform any tire repairs [1] at all. Then he conceded that on occasion Rittiner does its own tire repair work. On December 19, 1973, Rittiner purchased a tube for a 750 x 16 tire, the type used on the sweeper in the accident and on no other vehicle in the Rittiner pool. Faust stated he did not know if the new tube, purchased after the radial tire installation, had been placed in the new tires. Had Goodyear installed the new tube, this fact would have been established by their records which they had produced. Robert Bourgeois, the driver, also at first testified that Rittiner never did its own tire repair and later admitted that on occasions it did. In fact, after the accident, the sweeper was put back into service by using one of the undamaged tires that came off and by a spare wheel and rim kept in the Rittiner shop. It was Rittiner personnel who made the repair and reinstalled the rear tires.
To summarize the evidence quoad installation, it appears that Goodyear installed the rear wheels on December 18, 1973 and Rittiner personnel may or may not have removed them thereafter.
In another area of causality, there is evidence in the record that Bourgeois, the operator, may have had some indication that the vehicle was not running properly before *333 he drove onto the expressway. At the trial he testified he felt no unusual vibrations from the truck prior to the accident. When his deposition was used to refresh his memory to the effect that he had previously stated he had felt vibrations, he admitted first feeling the vibrations when he was at Schwegmann’s store on Broad Street, which is several miles from the accident site. He testified he customarily checks the tires three or four times during a shift. Bourgeois said he checked the tires immediately before driving onto the bridge approach and could not find the cause of the vibration. He attributed it to the load. At the time Bourgeois had been employed as a sweeper for approximately three weeks and had been operating that particular sweeper for about one week.
Although Bourgeois dismisses as routine the vibrations he felt, his testimony when read altogether gives the distinct impression that vibrations were not those normally experienced in the operation of the vehicle. When questioned about why he checked his tires before going onto 'the bridge, he indicated he thought he might have a flat. This answer eloquently demonstrates the machine was acting improperly before he drove it on the expressway.
The trial court dismissed the suit because:
“[It] * * * is of the belief that it can find no negligence on the part of R. J. Bourgeois, Perrin Rittiner, d/b/a Rit-tiner Equipment Co., Travelers Insurance Co., Crescent Ford Sales, Inc., Ford Motor Co.
“The question of negligence of Goodyear Tire & Rubber Co. was not proven if any existed on the part of them.”
From the quoted reasons, it is apparent the trial court placed on plaintiff the burden of affirmatively demonstrating in which respects any of the defendants named were negligent. If this is a correct application of the rules of evidence, the plaintiff must carry a burden of proof that is next to impossible to sustain. It is true he can demonstrate the wheels came off the truck. Through discovery and the third party pleadings, plaintiff has learned Goodyear installed the tires two weeks before the accident, but this in itself does not establish Goodyear’s negligence.
The crucial factual questions are whether any Rittiner personnel removed the .rear tires after the Goodyear installation and, if so, were they replaced with the degree of care required to safely attach a wheel. Certainly it is unreasonable to require plaintiff to go forward with this evidence since defendants Rittiner and Bourgeois are the parties most able to produce evidence along these lines. From the testimony adduced we know that Rittiner personnel sometimes changed tires on the sweeper, that this defendant purchased a tube from Goodyear after the tires were installed and that the driver Bourgeois had some indications of problems before he drove the sweeper onto the bridge.
Our review of the evidence leads us to apply the doctrine of res ipsa loquitur in evaluating liability. This rule of evidence is properly applied at the termination of a case after all the evidence is submitted, and only where the facts reasonably lead to the conclusion that the defendant was negligent in some manner. The effect is to shift to the defendant the burden of explaining why, under the circumstances, it was not negligent. Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 (La.1957). In Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (La.1972), the Court in describing the factual circumstances in which the rule of res ipsa loquitur should be applied stated it was when the inference of defendant’s negligence was the “most plausible explanation” or the “more probable cause” of the injury. If the evidence inferentially suggests the defendant’s negligence as the more plausible explanation, then the trier of fact must be satisfied that the party against whom the inference of negligence arises has satisfactorily brought forward evidence that would exculpate him from liability.
Analyzing the facts before us in the light of this discussion, we begin with the *334 premise that the wheels came off because someone was negligent. The sweeper was an instrumentality within the control of Rittiner for at least two weeks prior to the accident. While it is true Goodyear installed four new tires on December 18, which suggests some degree of responsibility might rest with Goodyear, it is within the sole province of defendant Rittiner to prove its employees did not tamper with the tires or change them after Goodyear’s installation. Had Rittiner, Faust and Bourgeois been consistent in the assertion that no Rittiner personnel removed the rear tires after the radials were installed, we would consider their testimony sufficient to exculpate Rittiner. But this is not the case. All three gave contradictory testimony as to whether Rittiner’s people did or did not change tires.
Further, the record suggests the driver Bourgeois was negligent in driving onto the bridge when he had reason to suspect the sweeper was vibrating more than it should have.
We conclude the negligence of Rittiner and Bourgeois combined to cause the accident in which plaintiff sustained his injuries. Premised on the finding that Rittiner failed to explain away the inference of negligence this result also warrants our finding that the alleged negligence of Goodyear was not established. Only by absolving itself of responsibility for tampering with the rear wheels between the installation by Goodyear and the accident, could Rittiner have shifted the inference of negligence to Goodyear.
The record is totally devoid of any evidence tending to establish a breach of duty owed by Crescent Ford Truck Sales, Inc., vendor, and Ford Motor Company, manufacturer, to Rittiner and/or plaintiff. Therefore the dismissal of the original and of the third party demands against these defendants are affirmed.
We next consider quantum. As a result of this accident, plaintiff suffered either an injury or the aggravation of a cervical disc condition, a cervical strain and activation of an arthritic condition in the cervical spine. He underwent a regimen of ultrasonic heat treatments to the neck and wrist areas and used cervical traction. Whether he developed a left stiff shoulder syndrome from the trauma is questionable in view of the fact that expert orthopedists who appeared for the defendants opined that plaintiff was voluntarily restricting the range of motion of the left shoulder. We were not impressed with Dr. Macaluso’s testimony and conclude that while plaintiff was indeed injured, he magnified the duration and intensity of his suffering. Plaintiff returned to work approximately one year after this accident and, taking the medical evidence as a whole, we conclude his general damages should rest on disability for that period and possible occasional discomfort for a short time thereafter. We award $17,500 general damages.
As to special damages, plaintiff claims loss of wages of $10,340.83 after taxes. The testimony of Michael Hager, operation supervisor of Electric Delivery Service, plaintiff’s employer, established Pi-tre did not work from the date of the accident until January 10, 1975. Although we find his computations confusing, if we compute lost wages by deducting the net income in 1974 from the net in 1973, we reach a figure slightly higher than that requested by plaintiff in brief. Accordingly we award the $10,340.83. There was a wage increase for plaintiff and other truck drivers during his absence; however, there is insufficient information to compute the loss accurately.
Plaintiff’s automobile, a 1965 Dodge, was a total loss for which he is entitled to recover $472. His medical expenses were $1,128.93. His total special damages are $11,941.76.
For the reasons assigned the judgment appealed from is affirmed insofar as it dismisses plaintiff’s suit against Goodyear Tire and Rubber Company, Crescent Ford Truck Sales, Inc., and Ford Motor Company, and reversed insofar as it dismisses plaintiff’s suit against the other defendants. It is now ordered, adjudged and decreed there *335 be judgment in favor of Carroll A. Pitre and against Robert J. Bourgeois, Perrin Rit-tiner, doing business as Rittiner Equipment Company, and the Travelers Insurance Company, jointly, severally and in solido, in the sum of $29,441.76 with legal interest from judicial demand and all costs of this suit.

AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

LEMMON, J., concurs with written reasons.

. The term “tire repair” as used in this opinion includes the changing of the tire and not necessarily its repair in every instance.