SCHOTT, Judge.
When this case was previously before us we affirmed the trial court’s dismissal of plaintiffs’ claims, 363 So.2d 1297 (La.App. 4th Cir. 1978), but the Supreme Court has reversed our decision to the extent that we affirmed the dismissal of the suits against New Orleans Public Railroad, 371 So.2d 783 (1979). The Court remanded the case to us to award plaintiffs their damages.
Bardfield testified as follows: In the August 22, 1969, accident he struck the top of his head and immediately thought that his neck was broken. Helped out of the automobile, he could not move his neck and suffered tremendous pain. He remained on the jobsite for two hours and was subsequently treated by Dr. David W. Aiken for two and a half years. In addition to the neck discomfort he suffered from migraine headaches, blurred vision and loss of equilibrium. Dr. Aiken prescribed physical therapy, medication and heat treatments and for a time Bardfield wore a Thomas collar. By the time of the trial in December, 1976, he still had pain and could not do hard laborious work.
Dr. Aiken, a general surgeon, testified: He first saw Bardfield on October 1, 1969, when he found tenderness with mild spasm in the left trapezious muscle over the left shoulder blade along with tenderness in some other muscles in the back of the left side of the neck. There was some restriction of motion in which he concluded that Bardfield suffered a chronic sprain of the muscles in the back of the neck and beside the shoulder blade on the left side. He confirmed plaintiff’s testimony as to the treatment prescribed and he also prescribed cervical traction for use at home. In spite of treatment over a three-year period he was unable to cure him of his chronic neck problem. Active treatment ended in September, 1972. At that time he was still suffering with his neck. In preparation for the trial he examined plaintiff in March, 1976, and found the left biceps reflex absent continuing over the left cervical muscles, and the need for a heating pad after a hard day’s work with occasional left arm pain. He recommended that Bardfield discontinue his occupation and change to one which did not involve strenuous use of the neck and arms and hands. He also recommended that plaintiff undergo cervical fusion at one or more levels of the spine. This advice was apparently not shared by Dr. Vogel, a neurosurgeon, or by Dr. La Rocca, an orthopedist, to whom Dr. Aiken referred Bardfield. Bardfield also had degenerative arthritis which had progressed over a long period of time before this accident and this was not unusual for an individual who had engaged in hard labor.
Dr. Vogel testified that he first saw Bardfield on November 30,1971, on referral by Dr. Aiken, and upon examination diagnosed acute and chronic cervical strain. He next saw him on January 4, 1972, when a *718 neurological examination was considered normal. When he saw plaintiff on April 11, 1972, he found no absence of biceps reflex reaction as Dr. Aiken had found. Although Bardfield was still complaining of pain when he saw him on April 11 and May 2 of 1972 there were no objective findings and plaintiff Bardfield was normal. He did not recommend surgery but advised Bardfield to continue with the conservative treatment being administered by Dr. Aiken.
Dr. Henry La Rocca, an orthopedic surgeon, testified he saw Bardfield on October 17 and November 28, 1972, on referral from Dr. Aiken. He diagnosed Bardfield’s condition as cervical spondylosis, a degenerative arthritic disease, on the basis of X-ray findings and thought this condition was aggravated by the trauma.
Finally, Bardfield was referred by Public Belt to Dr. H. R. Soboloff who examined him on October 16, 1973. He found no objective symptoms other than X-ray evidence of degenerative arthrosis of long standing. However, in comparing these X-rays with some taken in October, 1969, he found that some of the changes “could have occurred as a result of this injury” with the rest attributed to wear and tear. This does not incapacitate Bardfield but causes some of the discomfort about which he complains.
We have concluded that Bardfield is entitled to an award in general damages for chronic cervical strain and aggravation of preexisting arthrosis in the amount of $10,-000. He is likewise entitled to his special medical expenses of $477.75 for Dr. Aiken, § 80.00 for Dr. Vogel, and $44.11 for the Thomas collar and portable traction outfit, for a total of $601.86.
As to Burns, he testified that he suffered five or six weeks. The extent of his medical treatment was one visit to Dr. Santo Lo Coco, an orthopedic surgeon. Dr. Lo Coco had no record of the visit because all of his medical records prior to 1970 had been destroyed at the time of the trial, but his financial records verified a bill for the services rendered to Burns in the amount of $45.00. Burns is entitled to an award of $500 for general damages and the $45.00 for special damages.
Accordingly, there is judgment in favor of plaintiff, Sidney L. Bardfield, and against defendant, New Orleans Public Belt Railroad, in the sum of $10,601.86, with legal interest from date of judicial demand until paid, and for all costs of these proceedings.
There is judgment in favor of plaintiff, Joseph P. Burns, and against defendant, New Orleans Public Belt Railroad, in the sum of $545.00, with legal interest from date of judicial demand and until paid, and for all costs of these proceedings.
JUDGMENT RENDERED AFTER REMAND FROM SUPREME COURT.