SAMUEL, Judge.
Plaintiff filed this suit for personal injuries (resulting from a vehicular collision) against his own insurer under the uninsured motorists provision of that defendant’s policy and the driver of the other vehicle involved.[1] Liability was admitted by the insurer and, following trial, judgment was rendered against both defendants, in solido, in the sum of $18,053.32, consisting of $15,-000 general damages, $600.82 medical expenses, and $2,452.50 loss of wages, subject to a credit of $448.57 in medical expenses previously paid by the defendant insurer.
The defendant insurer has appealed seeking a decrease in the $15,000 general award and plaintiff has answered the appeal seeking an increase in that award to the sum of $30,000, together with penalties of $5,000 and attorney’s fees of $5,000 for alleged arbitrary and capricious refusal to tender any offer of settlement.
The accident occurred on July 26, 1975 when the individual defendant rear-ended plaintiff’s vehicle while the latter was stopped in traffic. Plaintiff argues that as a result of the accident he sustained a cervical sprain and a ruptured lumbar disc necessitating treatment for over two years. Appellant argues plaintiff sustained only a mild cervical sprain and low back sprain which resolved in about five months. In this court appellant specifically contends the $15,000 award for general damages is excessive, primarily because plaintiff failed to mitigate damages by performing exercises recommended by his physicians.
Evidence relative to plaintiff’s injuries was given by lay witnesses consisting of plaintiff, his wife, and several coemployees and by five medical doctors. That evidence is as follows:
Plaintiff testified: The accident occurred on July 26, 1975 on the Mississippi River bridge. He was taken to the emergency room of a local hospital where he received emergency treatment and where x-rays were taken. Several days later he was seen by Dr. Charles Kreiger with complaints to his low back. Exercises were recommended but discontinued after a few days because they were painful and of no help. On July 30 and August 25, he was seen by Dr. Bernard Manale, an orthopedic surgeon, with complaints referable to the neck and back. A Thomas Collar was recommended. He suffered excruciating pain on September 6, 1975 when he stooped to pick up clothes. He was taken to a hospital emergency room. He missed seven or eight days work as a result of the pain. On October 3, Dr. Manale recommended a back brace. Plaintiff was dissatisfied with this doctor because of the exercises he recommended and because plaintiff felt the doctor under *738 estimated the severity of the injury. His last visit was in October, 1975.
On February 13, 1976, plaintiff saw Dr. Homer Kirgis, a neurosurgeon, when he suffered severe pain while raking leaves. His back condition had been fairly stable from October, 1975 until this incident. He continued to see Dr. Kirgis and on April 14, the doctor recommended walking for exercise. In February, 1977 he again experienced bad back pain and again consulted Dr. Kirgis. He stayed home from work for eleven days at that time. On July 2, 1977, he saw Dr. Richard W. Levy, a neurosurgeon, at defendant’s request. He felt fine the entire summer but still had pain and discomfort two to three inches below the belt line at the center of his back.
Plaintiff stated he could not do the sit up exercises recommended by Dr. Manale in September or October, 1975 because he could not bend, and he did not engage in exercises recommended by Dr. Soboloff, one of the defendant physicians, because at that time he was Dr. Kirgis’ patient and Dr. Kirgis advised against any exercise other than walking. He missed 24V4 days of work as a result of the accident and lost $2,462.60 in sick leave.
Plaintiff’s wife testified: Prior to the accident her husband helped with his six children. He also enjoyed gardening and any kind of yard work. Now he is unable to pursue these activities and tires easily when riding in an automobile. About eight years prior to the accident he injured his back while in the army, but after one or two visits to a doctor it had cleared and he has had no back pain since that time until the accident occurred.
Plaintiff’s coworkers testified he wore a neck support, missed work on some occasions and was forced to stop work at times because of back pain. Those in the same car pool noted he had difficulty sitting comfortably.
In chronological order, the medical evidence is:
Dr. Kreiger’s deposition reflects: He examined plaintiff July 30, 1975, took a medical history and performed a routine orthopedic examination and took x-rays for plaintiff’s complaints of pain in his back. Plaintiff’s injuries were diagnosed as a mild lumbosacral strain of recent origin. Flex-ion exercises were prescribed with rest and moist heat. X-rays revealed a narrowed disc between L-4 and L-5 which the doctor concluded was preexisting. He found no evidence of a significant disc injury. On cross examination the doctor stated the clothes bending incident in September, 1975 would not be attributable to the accident in suit.
Dr. Manale testified: He first examined plaintiff August 25, 1975 for complaints of neck and back pain related to the automobile accident. He diagnosed the injures as mild sprain of the neck and back. A cervical collar was recommended. Plaintiff was given a prescription. On September 8,1975 the symptoms were mainly of the back. A more powerful drug was recommended and x-rays were taken. Plaintiff was seen again September 19, October 3, and October 16, 1975 at which time he was wearing a back brace. His condition was stable, he did not need active treatment and was told to return as needed. This doctor found no evidence of a ruptured disc or disc disease. He did, however, conclude there was a relationship between the clothes bending episode and the automobile accident because usually the act of bending over does not produce an onset of symptoms of such severity.
Dr. Kirgis’ deposition discloses: He examined plaintiff February 13,1976 for complaints of the lower back and stiffness of the neck which related to the automobile accident. Following a neurological examination the doctor concluded plaintiff had sustained a straining injury of the cervical and párs-spinous muscles and ligaments. No rupture was indicated. Plaintiff was advised to return if the symptoms reoccurred. He returned April 14, 1976 complaining of severe pain in the low back during an automobile trip. X-rays taken at this time indicated plaintiff had a ruptured disc at the lumbarsacral space and might have a defective disc of the fourth lumbar *739 intervertebral space. Plaintiff again returned February 24, 1977 with complaints of an occurrence of back pain on February 18, severe enough to cause him to go to a hospital emergency room. Following a neurological examination, the doctor concluded plaintiff had a severe occurrence of symptoms referable to his ruptured lumbar disc or discs, but appeared to be improving. On March 2, plaintiff was improving and had been working. The doctor recommended walking briskly, jogging or swimming and isometric exercises. Plaintiff was seen September 22, with complaints of periodic soreness of the lower back and neck. X-rays at this time revealed no changes from the films taken a year earlier. Dr. Kirgis concluded plaintiff had a 15-20% disability as a result of injuries to the disc. The prognosis is favorable to eventually have no more of these attacks. He did not consider the clothes bending episode responsible for the disc injury. He expects plaintiff to have continued discomfort and disability of the low back if he rakes the lawn or takes long automobile rides.
Dr. Soboloff testified. He examined plaintiff June 11, 1976 at the request of defendant. Although plaintiff complained of pain at the extremes of motion of the neck and soreness in the back, there was no evidence of spasm. The doctor stated lack of exercise could account for the complaints. He found no evidence of nerve root involvement or ruptured disc. X-rays taken at this time showed no abnormalities of the neck or back. The doctor reviewed x-rays taken at Ochsner Clinic and concluded they were photographically distorted. He explained in detail why this was so. He concluded that plaintiff, by not exercising, had not been rehabilitated.
Dr. Levy testified: He examined plaintiff July 25, 1977, on behalf of defendant. Plaintiff complained of pain in the low back, right shoulder and neck and denied any previous neck or back injury prior to this accident. He told the doctor of the clothes bending incident. Examination and x-rays were essentially normal. There was no evidence of a ruptured disc or disc injury with nerve root involvement. The doctor reviewed the Ochsner x-rays and gave his reasons for concluding there was a discrepancy in both Ochsner films when compared with each other. The doctor stated exercises recommended only a few days after the accident would be too soon. The patient should rest a month or two before exercising.
We do not agree with appellant’s contention that plaintiff failed to mitigate damages by his failure to perform the recommended exercises. Although it appears from the record that he could have been, and still could be, benefitted by an exercise program we do not find plaintiff deliberately refused to exercise and thus compounded his problem. He did try to perform the exercises when they were first recommended, but stopped primarily because of pain. As testified by some doctors, the exercise program could have been started too soon. We also note plaintiff was under the care of a neurologist who did not recommend, and in fact disapproved of, the exercises not taken by plaintiff.
Nor do we agree that the award is excessive. Plaintiff had been free of any back symptoms for eight years prior to the accident in suit. The trial court must have found that plaintiff’s symptoms up to and at the time of trial (February 8,- 1978) 2V2 years after the accident, resulted from the accident and there is evidence in the record to support such a finding.
Nor do we agree that the amount awarded for pain and suffering is inadequate, as contended in the answer to the appeal. As stated above, plaintiff claims he suffers from a ruptured disc and consequently is entitled to $30,000. The trial court found plaintiff’s complaints were related to the accident but not permanent, and that after two months of physical therapy plaintiff would have intermittent pain for approximately thirty months. There is substantial evidence in the record to support that finding and we find no abuse of discretion in the award of $15,000 as general damages.
*740 Finally, we address ourselves to that part of plaintiff’s answer to the appeal which seeks penalties and attorney’s fees for the insurer’s alleged arbitrary and capricious refusal to pay or tender an offer of payment in settlement of plaintiff’s claim. The issue of penalties and attorney’s fees was neither pleaded nor raised in the trial court; plaintiff attempts to raise that issue, for the first time, in this court. Under these circumstances, we refuse to consider this new matter.[2]
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. It is conceded the other motorist was uninsured. He was not present or represented at the trial. The court was advised he had filed bankruptcy proceedings.

. Burton v. Allen Parish Police Jury, 198 La. 752, 4 So.2d 817.