STOKER, Judge.
Defendant, Gulf Insurance Company, appeals a general damage award in favor of plaintiff, Edelgard Weissbohn. The defendant admits liability and on appeal contends only that the award for personal injury is excessive.[1] The sole issue on appeal is the quantum awarded to Mrs. Weissbohn.
The trial court awarded plaintiff $25,000 in general damages and $1,711.18 for past medical and incidental expenses. Defendant seeks to have the general damage award reduced to no more than $10,000.00.
It is clearly established in our law that much discretion is vested in the trier of fact in assessing general damages. LSA— C.C. art. 1934(3); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) and Reck v. Stevens, 373 So.2d 498 (La.1979) emphasize that before an appellate court can change a general damage award made by a trial court the record must clearly reveal that the trier of fact abused its discretion in making the award. As mandated by these decisions our initial inquiry is whether the trial court’s award for the particular injuries and their effects on this particular injured person was a clear abuse of discretion. At this initial inquiry the role of prior awards is limited. They may serve as aids only when the present award is shown to be *753 greatly disproportionate to the mass of past awards for truly similar injuries. Appellant cites numerous prior awards in order to show the award to Mrs. Weissbohn is excessive. We are unaided by these awards since we find none of them truly similar to the instant case.
We have carefully considered the evidence upon which the award is based and do not find that the trial court abused its much discretion. We affirm.
The record reveals that the plaintiff, Edelgard Weissbohn, sustained personal injuries on June 3,1978, when her automobile was rear-ended by a large tractor trailer truck on Highway 171 South. At the time of the accident Mrs. Weissbohn was thirty-three years old and owned and operated a small restaurant known as Pak-A-Pig Barbeque.
Within an hour of the accident plaintiff underwent an examination in the emergency room of the Fort Polk hospital. Her initial complaints were of pain in the right leg, dizziness, nausea, and stiffness of the neck and shoulders. The attending physician prescribed the use of a cervical collar, hot packs, bed rest and various pain medications.
In addition to numerous visits to the Fort Polk hospital plaintiff also sought treatment from Dr. J. E. Hearne, a general practitioner, Dr. Heinz K. Faludi, a neurological surgeon, Dr. Stanley K. Gilbert, an orthopedic specialist, and Dr. Walter A. Fletcher, a chiropractor. Plaintiff was also examined by Dr. Douglas L. Gamburg, an-orthopedist, at the request of the defendant. The record indicates that plaintiff made 52 or 53 trips to various doctors from the time of the accident on June 3, 1978, until the time of the trial on October 23, 1979. The physicians agree that Mrs. We-issbohn sustained a cervical sprain or strain.
Dr. Faludi examined Mrs. Weissbohn on July 25, 1978, approximately seven weeks after the accident. At that time plaintiff’s principal complaints were neck pains and severe headaches. Dr. Faludi diagnosed plaintiff’s injury as a moderately severe cervical sprain to the neck musculature and ligamentous structures and articulations with irritation to the occipital nerves including minor upper thoracic sprain. The doctor advised Mrs. Weissbohn to continue the use of the cervical collar, the hot packs and medication. Dr. Faludi indicated to Mrs. Weissbohn that it would take several months before her condition would improve.
On April 2, 1979, approximately ten months post accident, Mrs. Weissbohn again visited Dr. Faludi. Her complaints at that time included severe headaches with pain penetrating through her head ending in the area of the eyes. In addition plaintiff complained of neck pains and lower back pains. Upon Dr. Faludi’s recommendation plaintiff underwent a myelogram on April 17, 1979. The myelogram ruled out the possibility of a herniated cervical disc and confirmed the diagnosis of nerve irritation. On April 18, Dr. Faludi performed a bilateral occipital neurectomy designed to relieve Mrs. Weiss-bohn’s headache pain. This operation involved incising through the back of the neck down to the muscular layer, finding the major occipital nerves and clipping out 5 to 6 centimeters of nerve on each side. The operation caused numbness to the back of Mrs. Weissbohn’s head. This numbness is permanent. Plaintiff experiences discomfort because of the difference in feeling in the areas which are numb and those areas which are not numb. The operation left plaintiff with a scar which extends below the hairline. The operation resulted in a 1% permanent disability for plaintiff because of the numb areas.
As indicated plaintiff was seen and treated by several other physicians. These visits took place both prior to and after treatment by Dr. Faludi. In essence these doctors agreed with Dr. Faludi’s diagnosis and treatment and re-iterated that it would take time for Mrs. Weissbohn’s sprain to resolve.
Mrs. Weissbohn consulted Dr. Stanley K. Gilbert, orthopedic specialist at Fort Polk, Louisiana, on July 30, 1979. After making an orthopedic examination he thought Mrs. Weissbohn “manifested symptoms of a *754 chronic cervical strain without evidence of bony or neurologic pathology.” This diagnosis was based on “her history, mechanism of injury, as well as her current symptoms and physical findings of the limitation of extension and decreased rotation, primary on rotation to the left.” Certain motions of the neck resulted in producing pain. Dr. Gilbert had Mrs. Weissbohn return on the following day at which time he discussed her condition with her:
“Basically, as I outlined above she had sustained a chronic strain of the supporting ligaments and muscles at the posteri- or aspect of her neck. I told her that it was likely that she would have a residual amount of pain for the rest of her life, but that this (sic) very well slowly improve. The exact degree of residual pain is somewhat open to question. Each case is a little bit different and that while she could expect some pain relief I felt that she would have some degree of residual pain.”
No drugs or medication were prescribed but Dr. Gilbert did suggest certain exercises and procedures to give Mrs. Weissbohn relief from her inability to sleep because of neck discomfort. He advised her to avoid activities such as heavy lifting and straining. Dr. Gilbert was of the opinion that certain phases of Mrs. Weissbohn’s work would aggravate her pain. He suggested several procedures and changes in her working arrangements that might lessen the effect of work activity on her pain. Dr. Gilbert felt that plaintiff would be left with a certain amount of residual pain but did think that there would be some slow diminution of the pain over the years, the course of which he could not predict.
Dr. Gilbert examined Mrs. Weissbohn on the one occasion only. He readily agreed that a physician who regularly saw her and treated her would be in a better position to evaluate her condition and prognosis.
The evidence establishes that plaintiff experienced pain and discomfort for a period of ten months, underwent many types of treatment, and endured a myelogram and bilateral occipital neurectomy which left a disfiguring scar. Plaintiff will suffer some pain for the rest of her life.
Considered against the mass of quantum cases not involving scars, it would appear to us that the trial court’s award of $25,000.00 is excessive. Awards may be found presenting somewhat similar circumstances ranging from $10,000.00 to $20,000.00 with a concentration between $15,000.00 to slightly less than $20,000.00.[2] The trial court summarized its conclusions on the question of quantum in these comments:
“I have reviewed the cases cited by both counsel. Mueller v. New Orleans Public Service, Inc., 348 So.2d 1296 at 1298 presents a cervical strain of a more serious nature with lengthier residuals and more objective findings. If the strain were the only condition involved herein, the award in the Mueller case— $25,000.00 — would seem to be excessive herein. Considering, however, that in the present case plaintiff endured- the diagnostic procedure known as a myelogram as well as the occipital neurectomy, and considering the resultant permanent *755 numbness, and the disfiguration, albeit slight, the sum of Twenty Five Thousand ($25,000.00) Dollars is regarded as being appropriate in this case and will be awarded to the plaintiff.”
The trial court referred to plaintiffs surgical scar as “slight”. The scar as depicted in a photograph (Plaintiff’s exhibit P-8) is smooth and straight. It extends downward from a point in Mrs. Weissbohn’s hair at the back of her head even with the tops of her ear lobes to a point just below the middle of her neck.
If we were to consider the highest reasonable award under the guidelines of Coco v. Winston Industries, Inc., supra, and Reck v. Stevens, supra, (without giving weight to the neck scar) to be approximately $20,-000.00, the trial court award of $25,000.00 to include an award for the scar may be justified. In view of the trial court’s comments quoted above and giving consideration to the scar we cannot say that the trial court abused its much discretion.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal to be assessed ,to defendant-appellant.
AFFIRMED.

. The original defendants were Gulf Insurance Company, Blackmon Trucking Company, Inc., and Clifton D. Fowler. The latter two defendants were dismissed at the trial by the plaintiffs and Gulf Insurance Company admitted liability. Tr. 348 (Vol. 3)

. Harris v. Lee, 377 So.2d 1352 (La.App. 1st Cir. 1979): $15,000 (reduced from $45,000); Schexnayder v. United Services Automobile Association, 375 So.2d 736 (La.App. 4th Cir. 1979): $15,000; Bardfield v. New Orleans Public Belt Railroad, 375 So.2d 716 (La.App. 4th Cir. 1979): $10,000; Vicknair v. Olin, 371 So.2d 360 (La.App. 4th Cir. 1979): $15,000; Pitre v. Bourgeois, 371 So.2d 331 (La.App. 4th Cir. 1979), writ denied, 374 So.2d 657 (La.1979): $17,500; Rond v. Sims, 355 So.2d 591 (La.App. 4th Cir. 1978), writ refused, 357 So.2d 1164 (La.1978): $12,000; Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3rd Cir. 1977), writ refused, 354 So.2d 1050 (1978): $18,900; Derouen v. Southern Pacific Transportation Co., 351 So.2d 300 (La.App. 3rd Cir. 1977), writ refused, 353 So.2d 1046 (La.1978): $17,500; Crandall v. Scott, 350 So.2d 922 (La.App. 4th Cir. 1977): $12,000; Mueller v. New Orleans Public Service, Inc., 348 So.2d 1296 (La.App. 4th Cir. 1977): $25,000; Dominque v. Continental Insurance Company, 348 So.2d 209 (La.App. 3rd Cir. 1977): $30,000; Gaudet v. Allstate Insurance Company, 346 So.2d 333 (La.App. 4th Cir. 1977), writ refused, 350 So.2d 892 (1977): $10,000 (reduced from $40,000); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977): $30,000 (increased from $15,000); and Prejean v. United States Gypsum Co., 345 So.2d 181 (La.App. 3rd Cir. 1977): $20,000.