471 So.2d 976 (1985)
Shirley GILDER and Michael D. Gilder
v.
Blosom S. BRANTON and State Farm Insurance Company.
No. CA 840616.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
Glenn P. Marcel, Baton Rouge, for plaintiffs-appellants Shirley Gilder and Michael D. Gilder.
Richard Creed, Jr., Baton Rouge, for defendants-appellees Blosom S. Branton and State Farm Ins. Co.
*977 Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON, JJ.
GROVER L. COVINGTON, Chief Judge.
In this case two motorists tried to fit their vehicles into the same parking space at the same time at the Vo-Tech School parking lot in East Baton Rouge Parish. The law of physics being what it is, they succeeded only in inflicting personal injury and slight damage to the vehicles. From their testimony, each driver thought that the other was going to make or had made some different maneuver. In any event, they both happened to choose the same parking space at the same time, although others were available. While one motorist was slowly backing into position, the other had already backed into the slot. In fact, the slower motorist described the other motorist as "the fastest backer upper and parker I have ever in my life seen."
The jury determined that the motorists were equally at fault in causing the accident, and fixed the plaintiff's fault at 50 percent and the defendant's fault at 50 percent. The jury found the total amount of damages suffered by the plaintiff in the amount of $12,500.00.
Judgment was signed on December 8, 1983, incorporating the jury verdict. On December 12, 1983, plaintiffs filed motions for judgment notwithstanding the verdict, new trial and additur. The trial court denied the motion for judgment notwithstanding the verdict, but granted the motion for additur. The amount of the additur was less than the amount requested by plaintiffs. The defendants accepted the additur in lieu of a new trial. Thereafter, the trial court signed the judgment, amending and conforming the December judgment to the additur, and assessing an expert witness fee. The plaintiffs filed this devolutive appeal, and Blosum Branton and State Farm Insurance Company, the defendants, answered the appeal.
Plaintiffs-appellants contend that the fixing of 50 percent fault to Shirley Gilder in causing the accident is manifestly erroneous and that setting the amount of damages at $49,378.61 is an abuse of discretion, in view of the serious injuries sustained by Mrs. Gilder. Defendants contend that the amount awarded by the trial court as additur is excessive.
MRS GILDER'S VERSION:
Shirley Gilder testified she was stopped in the travelling lane of the parking lot when Mrs. Branton drove by. Mrs. Gilder said she backed into a parking space located on the same side of the lane in which she was travelling. After she had parked her vehicle, she saw Mrs. Branton's vehicle backing toward her. She began blowing her horn, but Mrs. Branton continued to back and hit the Gilder vehicle.
MRS. BRANTON'S VERSION:
Blosom Branton testified that as she was starting to back into the parking space, the Gilder vehicle pulled into the parking lot. She saw the Gilder vehicle and stopped to allow the car to pass. She assumed that the vehicle had passed and she resumed backing. She did not again see the Gilder car until she backed into it. She checked the space to see if it was clear before beginning her backing maneuver. She did not hear any horn blowing. After the accident, the motorists exchanged information. According to Mrs. Branton, Mrs. Gilder told her she was not hurt.

1.

LIABILITY
Essentially, a determination of liability in this case turned on the credibility of the two parties involved in the accident, Mrs. Branton and Mrs. Gilder. There were no eyewitnesses to the accident.
There was evidence introduced upon which the jury could base its findings of 50 percent fault on the part of each party. The evidence showed that this accident occurred a few minutes past 8:00 o'clock a.m. and that both of these parties were headed for class at the Vo-Tech School, which started at 8:20. Consequently, there was a motive for them to hurry.
In all likelihood, the jury determined that both motorists attempted to get into this *978 one parking space at the same time; but that Mrs. Gilder had parked her vehicle first. Mrs. Branton said that she was stopped and had started to back in when she saw the Gilder vehicle approaching. She stopped to let that vehicle pass and then resumed her backing maneuver. She said she looked in her mirrors when she was making the backing manuever, but that Mrs. Gilder's vehicle did not appear in the mirrors. Mrs. Gilder saw or should have seen that Mrs. Branton was backing into that particular parking slot before she pulled into it herself.
In Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3rd Cir. 1984), the Court held that the findings of the trier of fact as to percentages of fault under LSA-C.C. art. 2323 are factual, just as its findings of contributory negligence under the old law were factual. Also, the question of the reasonableness of a party's actions is one of fact. Thibodaux v. Potomac Insurance Company, 201 So.2d 159 (La.App. 1st Cir.1967).
It is established that we, as intermediate appellate courts, may not disturb a trier of fact's findings and conclusions of fact in the absence of clear error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
We conclude from the evidence, as the jury and the trial judge did, that Mrs. Branton was negligent when she backed her vehicle without ascertaining that the way was clear before starting to execute or continuing to execute such a maneuver, and that Mrs. Gilder was negligent in placing her vehicle in the path of a backing vehicle and in failing to yield the right to Mrs. Branton of the parking space into which Mrs. Branton was obviously trying to back.
The finding of 50 percent negligence on each party will not be disturbed, since we do not find that the jury's determination of fact is clearly erroneous. The factual findings of the jury are supported by evidence in the record.

2

Quantum
We disagree with the trial court's additur. The jury's quantum award should have not been disturbed, since it was not clearly erroneous. The following facts support the jury's award. This was a parking lot accident, with both vehicles going at a minimum rate of speed or stopped. Defendant's vehicle was undamaged, and plaintiff's vehicle was slightly damaged. After the accident, Mrs. Gilder did not complain to the investigating officer of any injuries. She told Mrs. Branton that she was not hurt. In fact, she went on to school that day, and Mrs. Branton continued to see her at school for some time afterwards. Approximately two weeks after the accident, Mrs. Gilder went to see Dr. Anton, a chiropractor. (Dr. Anton was not called as a witness.)
About two months after the accident, Mrs. Gilder went to see Dr. Allen Jackson. His report states in part:
"The source of the patient's complaints are not clear to me. The delay of onset of the neck and shoulder symptoms of two weeks following the accident, in my opinion, is unusual and I find it difficult to believe that an accident causing such intense symptomatology would not have resulted in near immediate neck and shoulder pain. The examination basically, also, was found to be within normal limits today.
"Since this patient has not actually had any medical treatment for her complaints, no matter what the source, she asked that I refer her to a physician for this purpose. I suggested Doctor Clifford since he knows her well and has previously operated on her. I would certainly agree with this referral."
Essentially, Dr. Jackson found a normal examination and questioned the source of her complaints. He also questioned the causal relationship between the accident and the injuries of Mrs. Gilder.
Dr. Clifford gave testimony in his deposition which also questioned the causal relationship *979 between the plaintiff's injuries and the accident, as follows:
"Q. What were the findings on the CAT Scan?
"A. This finding was done following a myelogram, but not much was visible. Amipaque remaining in the canal, moderately prominent bony spur projecting posterior from the vertebrae at the C-5,6 interspace.
"Q. What does that mean?
"A. A bony spur is evidence of degeneration that is seen.
"Q. Is that something that would result from the accident or something that this lady may have had prior to the accident?
"A. This is nine months from the accidentthis probably pre-existed the accident.
"Q. That type of degenerative process, the bony formation, can that account for complaints of pain?
"A. Yes, sir, it can."
However, Dr. Clifford was of the opinion that "it is reasonably certain that the accident caused it." The jury was thus presented with the question of a pre-existing condition in addition to the other factors concerning the injury to Mrs. Gilder.
Dr. Clifford later suggests that the chiropractic treatment may have aggravated Mrs. Gilder's condition:
"Q. Doctor, are you familiar with the type of treatment administered by chiropractors, chiropractic adjustment, I believe it is called?
"A. Am I familiar with it? Yes, sir, in a way.
"Q. Do you know what they do?
"A. I know they pop necks and bang things and move things around and stretch.
"Q. Is it possible that that type of treatment can aggravate or cause the disc to rupture or cause a disc problem?
"A. In my opinion it certainly can aggravate it. And I have seen patients who have had an acute exacerbation of pain associated with chiropractic manipulation that I suspect has been a disc rupture, yes, sir."
Dr. Clifford further testified that the surgery was a success with a good result obtained. The doctor only placed two restrictions on Mrs. Gilder: sleeping on her stomach and any activity which would have her neck in extremes of motion for prolonged periods of time. He assigned a disability of ten to fifteen percent.
Because of the question of causation and the success of plaintiff's recovery, the jury's award of $12,500.00 was not an abuse of its much discretion. The following cases are consistent with that award. Pitre v. Bourgeois, 371 So.2d 330 (La.App. 4th Cir.1979), writ denied 374 So.2d 657 (La.1979). In the Pitre case, plaintiff was awarded $17,500.00 in general damages for a cervical strain and aggravation of a cervical disc condition, with accompanying stiffness of the left shoulder.
In McCarroll v. Asplundh Tree Expert Company, 427 So.2d 881 (La.App. 1st Cir. 1982), writ denied 432 So.2d 268 (La.1983), the Court awarded $11,000.00 as general damages for subluxation of six vertebrae and acute traumatic invertebral disc syndrome, where treatment of traction, heat and manipulation were administered. Schexnayder v. United Services Automobile Association, 375 So.2d 736 (La.App. 4th Cir.1979), awarded the plaintiff $15,000.00 in general damages for a cervical sprain and possible ruptured lumbar disc, where pain required her to wear a neck support. In DiVincenti v. Desforges, 372 So.2d 606 (La.App. 4th Cir.1979), the plaintiff, suffering from residual pain resulting from an aggravation of a preexisting degenerative disc condition, was awarded $12,500.00, for both general and special damages.
Before a general damage award can be disturbed, the record must clearly reveal that the trier of fact abused its wide discretion in making the award. The initial inquiry must be directed at whether the award for the particular injuries and their effects on this particular individual is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498 *980 (La.1979); Jenkins v. Jenkins, 439 So.2d 504 (La.App. 1st Cir 1983). The finding of abuse must be based on the facts in the record, rather than past cases which appear to be similar to the case before the court. Hanzy v. Sam, 385 So.2d 355 (La. App. 1st Cir.1980), writ denied 386 So.2d 357 (La.1980).
Only when the record reveals a clear abuse of the trier of fact's much discretion is the Court permitted to use prior awards to aid it in fixing an appropriate award and may then amend the award such that it is raised to the lowest point which is reasonably within the discretion of the trier of fact. LSA-C.C. art. 1934(3); Prevost v. Cowan, 431 So.2d 1063 (La.App. 1st Cir.1983).
For the foregoing reasons and based on the evidence in the record, we find that an award of $12,500.00 is proper under the circumstances of this case. This amount is, of course, reduced in proportion to Mrs. Gilder's 50% negligence.
Accordingly, we amend the judgment of the trial court, in conformity with the jury's verdict, to fix the award to the plaintiff in the amount of $6,250.00, plus interest and costs. Costs of this appeal are to be borne equally by the parties.
AMENDED, AND AS AMENDED, AFFIRMED.