471 So.2d 1160 (1985)
Preston HARRINGTON, Jr., Plaintiff-Appellee,
v.
CITY OF ABBEVILLE, et al., Defendant-Appellant.
No. 84-582.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
*1161 Samuel R. Cicero, Baton Rouge, for defendant-appellant.
Darrell J. Hartman, Abbeville, for plaintiff-appellee.
Before FORET, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
From a total damage award of $107,659 against the Louisiana Department of Transportation and Development, in favor of Preston Harrington, Jr., and his wife, based on injuries sustained when he tripped on an exposed reinforcement rod of a state-maintained street and curb, the DOTD appealed, arguing issues of both liability and quantum. We find no error. We affirm.
The original suit named both the City of Abbeville and the DOTD. The city was dismissed when it became apparent that the accident happened on a state owned and maintained right of way.
The accident was unwitnessed. Harrington testified that on October 18, 1982, he fell and was injured at the intersection of Charity Street (La. State Highway No. 14) *1162 and Guegnon Street in Abbeville, when he tripped on a reinforcement rod that had become exposed when the curb, of which the rod was a component, broke. The DOTD admitted in a joint stipulation that it had the custody and control of the rod and that it had the duty to maintain, repair, and police the area. Defendant's only argument concerning liability is that Harrington did not prove that his injury was caused by the defect. Harrington described the accident: he said his right leg hooked onto something, he stumbled, went down on his hands, "cussed" awhile, then went to see what "knocked" him down, and discovered the rod. His back began hurting immediately and he saw his family physician, Dr. Thomas Latour, that same day. Dr. Latour's records reflected a history related to him by the patient of an accident caused by a protruding rod. There was no other evidence bearing on the element of causation between the defect and plaintiff's injuries.
The trial court believed Harrington. Our study of his testimony reveals no contradictions, inaccuracies, or other weaknesses that in any way detract from the credibility evaluations and findings of fact made by the trial court. Under the settled standard of appellate review of Canter v. Koehring Co., 283 So.2d 716 (La.1973), we do not disturb the lower court's finding of liability.
The issue of damages took up most of the trial. The issue of damages was complicated because, although Harrington unquestionably suffered an injury, he also unquestionably had a bad back before the accident. Compounding his medical problem was a psychiatric overlay condition. The trial judge made an itemized award to Preston Harrington totaling $100,159, and an award to Dianne Harrington for loss of consortium for $7500.
The DOTD attacks these awards as being excessive, focusing mainly on the $35,000 item of pain and suffering, the award of approximately $31,000 for loss of earnings, and the loss of consortium award to Mrs. Harrington of $7500. The plaintiffs have answered the appeal and asked for increases in the awards.
Our review of these awards must follow the procedure set forth in Reck v. Stevens, 373 So.2d 498 (La.1979), in the words of the court:
"[T]he initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion' ... in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, or insufficient. Only after such determination of abuse has been reached, is a resort to prior awards appropriate ... for purposes of then determining what would be an appropriate award for the present case."
(footnote and citations omitted)
The accident occurred on October 18, 1982. The facts regarding the particular injuries which occurred on that date and their effects upon this particular injured person, must begin with mention of Harrington's pre-existing back conditions.
Harrington's back problems began in 1974 when an upright freezer fell on him causing him to pull some muscles in his back. He also crushed the L-5 disc in his lower back in 1976. This injury required corrective surgery. A nervous condition also manifested itself after this injury. Harrington was sufficiently recovered to return to work in 1978.
He was again injured in a ladder accident in August of 1980. A fusion was performed on his back and the nervous condition resurfaced. Harrington had not returned to work at the time of this trial. Although he had not yet returned to work, he testified that his back had improved to the point where he could resume employment at the time of the October 18, 1982, accident and that he had been offered a job through his union which was to pay $11.40 per hour for a 40 hour work week.
*1163 Harrington's back pain increased after the 1982 accident. His nervous condition recurred. His sex life became practically nonexistent. He experienced neck pain, headaches and numbness in his left arm. The neck was much improved at trial while the headaches and numbness remained.
Harrington's wife, Dianne, testified that his back pain has increased since the 1982 accident. She testified that he was difficult to live with during the periods of increased pain which occur three to four times a week. She said Harrington has been unable to function sexually since the accident.
Dr. Thomas Latour, a general practitioner and psychiatrist, was Harrington's family physician. He first treated Harrington for mental problems following Harrington's crushed disc injury in 1976. He testified that Harrington had explosive personality traits and problems with impulse controls, and that he was suffering from significant depression and severe anxiety at that time. Dr. Latour testified that Harrington's symptoms at trial were not unlike the symptoms experienced in 1976.
Dr. Latour began treating Harrington for his nervous condition in March 1980. He treated Harrington only for his nervous condition until the August 1980 accident, at which time the treatment was expanded to treat Harrington's lower back problems as well.
Dr. Latour's opinion was that Harrington's psychiatric symptoms were associated with his pain and his inability to work. He said that Harrington's nervous condition was much improved during the period preceding the 1982 accident. The back pain became more severe after that accident and Dr. Latour thereafter treated Harrington every two weeks until the trial.
Harrington was treated with cortisone injections at two week to one month intervals. These injections relieved the pain until the medication wore off. The pain would then recur.
Harrington's psychiatric condition was calm for a few months preceding the 1982 accident. Harrington required stronger medication to control the symptoms after the accident. At trial, Harrington was taking Etrafon-Forte, a major tranquilizer combined with an anti-depressant. He had been on this medication for about a year. Florinol was prescribed for Harrington's headaches. The doctor attributed the headaches to Harrington's periodical stress.
Dr. Latour testified that work of a supervisory nature would have been therapeutic and also within Harrington's capabilities immediately preceding the 1982 accident. He did not think that Harrington was capable of performing any type of work until his psychiatric condition stabilized for a period of several months. He knew of no contributing factors other than the 1982 accident. He testified that if Harrington's lower back condition stabilized, it would then take six months to a year for Harrington to achieve a stable psychiatric state.
Dr. Latour testified that a diagnosis of the extent of Harrington's injuries from the 1982 accident would be difficult for anyone to render without the benefit of surgery to actually see the damage. He felt that future surgery was a certainty.
Dr. Roland Miller, an orthopedic surgeon, testified that he first treated Harrington on January 24, 1983. The initial examination indicated that Harrington did not have a neurological problem, although there were complaints of neck and back pain. Dr. Miller ordered an EMG nerve conductor study which showed chronic nerve involvement in Harrington's right leg and his arms. Dr. Miller attributed this damage to Harrington's prior injuries.
Dr. Miller suspected that Harrington's problems were the result of a lumbosacral sprain imposed on his prior condition and a cervical sprain, and he ordered a CAT scan. The CAT scan of the cervical spine was within normal limits. The CAT scan of the lumbar spine showed surgical scar tissue and disc bulging within normal limits. The bulging discs were not pressing on a nerve root and were not the cause of Harrington's pain.
*1164 Dr. Miller felt that Harrington should have healed to the point at which he was before the 1982 accident within a year to a year and a half after the accident. He had no explanation for Harrington's symptoms seventeen months after the accident other than the possibility, suggested by the court, that the condition could be psychosomatic.
Glen Hebert, a vocational rehabilitation specialist, testified that he evaluated Harrington for a Social Security hearing to determine Harrington's future employability. He also met with Harrington the day before the trial. He felt that Harrington could have performed supervisory tasks before the 1982 accident, but that he was unable to perform such work at the time of the trial due to his psychological and psychiatric problems. He testified that non-union jobs were available and within Harrington's capabilities in 1982 that were paying from $6-8.25 per hour for a 40 hour work week.
Defendant contends that the award of $35,000 for pain and suffering associated with Harrington's lower back was excessive. Defendant's brief focuses on the testimony of Dr. Roland Miller, whose examination of Harrington indicated that the lower back pain was the result of a prior existing condition. However, the trial court was more impressed with the testimony of Harrington and his family physician, Dr. Thomas Latour, both of whom testified that Harrington's back condition worsened after the accident. We find no abuse of discretion on the part of the trial court regarding this part of the award. Canter v. Koehring Company, supra.
Defendant appeals the award for both past and future loss of earnings, alleging that the fact that Harrington was receiving Social Security disability income rendered him unemployable. The trial court relied on the testimony of Harrington that he had lined up a job at the time of the accident and that of Dr. Latour that such work would be both therapeutic and within Harrington's capabilities, in making the awards. The trial court was also impressed with the testimony of Glen Hebert concerning the availability and pay scale of jobs within Harrington's capabilities. The supreme court addressed the issue of actual earnings versus potential earning capacity in Folse v. Fakouri, 371 So.2d 1120 (La.1979). There the court said that "Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury." The trial court excluded the possibility of a double recovery by Harrington by reducing the award by the amounts received as disability income. We find no abuse of the trial court's discretion in making its award for this element of damages.
Defendant argues that the award for future medical expenses constituted clear error. The trial judge stated that "no future medical expenses have been proven." The trial judge then implicitly withdrew that statement by awarding future medical expenses to provide for semi-monthly office visits to Dr. Latour, and drugs, both for a two year period. Dr. Latour testified that Harrington's psychiatric state should stabilize within six months to one year after the stabilization of his lower back condition. Harrington's lower back condition had not improved by the time of the trial, and there was no medical testimony to indicate when the lower back condition might stabilize. Under the circumstances of this case, we can find no abuse of discretion in the award made for future medical expenses.
Finally, Dianne Harrington and defendant both appeal the amount awarded for loss of consortium. The trial court had no guidance in determining what amount would compensate Mrs. Harrington for her loss under this cause of action, which had just been created by the Legislature in the session before the injury occurred. Mrs. Harrington testified that her husband had become difficult to live with and also that he could not function sexually. Under the circumstances of this particular case we find no abuse of the trial court's discretion *1165 in making an award of $7500 to Mrs. Harrington for loss of consortium.
For these reasons, the judgment of the trial court is affirmed, at appellant's costs.
AFFIRMED.