499 So.2d 562 (1986)
Luby R. THOMAS, et al., Plaintiff-Appellee,
v.
STATE FARM INSURANCE CO., et al., Defendant-Appellant.
Scott E. THOMAS, Plaintiff-Appellee,
v.
STATE FARM INSURANCE CO., et al., Defendant-Appellant.
Mary Frances TUGGLE, Plaintiff-Appellee,
v.
STATE, Through DEPT. OF TRANSPORTATION AND DEVELOPMENT, et al., Defendant-Appellant.
Billy Phillip TUGGLE, Plaintiff-Appellee,
v.
STATE, Through DEPT. OF TRANSPORTATION AND DEVELOPMENT, et al., Defendant-Appellant.
Nos. 18282 to 18285.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1986.
Writs Denied January 30, 1987.
*563 Tyler & Johnson by D.G. Tyler, Shreveport, for plaintiff-appellee Luby R. Thomas.
Gordon, Bailey & Assoc. by Jack M. Bailey, Jr., Shreveport, for plaintiff-appellee Scott Thomas.
Steven G. McKenzie, Bossier City, for plaintiff-appellee Mary Frances Tuggle.
A. Richard Snell, Bossier City, for plaintiff-appellee Billy Phillip Tuggle.
Ronald R. Thompson, Baton Rouge, for defendant-appellant State, Through the Dept. of Transp. and Development.
Kitchens, Benton, Kitchens & Warren by S. Michael Adcock, Minden, for defendant-appellant State Farm Ins. Co.
Before MARVIN and JASPER E. JONES, JJ., and CULPEPPER, J. Pro Tem.
CULPEPPER, Judge Pro Tem.
The only issue raised by the state in its appeal is whether certain damages awarded by the trial court are excessive. Finding that the trial judge abused his discretion in making some of the damage awards, we amend those awards and affirm as amended.

FACTS
At approximately 2:00 p.m. on November 4, 1983, Mary Frances Tuggle was driving on U.S. Highway 79 from Homer to Minden. She was in her proper lane of travel and accompanied by her husband, Billy Phillip Tuggle, in the front passenger seat. At about the same time, Scott E. Thomas, the son of Barbara W. Thomas and Luby R. Thomas, was driving on the same highway from Minden toward Homer. Barbara W. Thomas was riding in the front passenger seat and Scott's brother, Kenneth Ray Thomas, was lying down on the back seat.
Both vehicles were travelling within the speed limit and at reasonable speeds under the circumstances. The Tuggle vehicle struck a collection of water in its lane of travel, went out of control, crossed into the oncoming lane, and was struck by the Thomas vehicle. Both Scott and Kenneth Thomas were injured and Mrs. Thomas was killed in the accident. Mr. and Mrs. Tuggle were also injured with Mrs. Tuggle suffering extensive injuries requiring several operations and lengthy hospital stays.
Luby R. Thomas, individually, and as the administrator of the succession of Barbara W. Thomas, and as the tutor of the minor Kenneth Ray Thomas filed suit against Mary F. Tuggle, Billy P. Tuggle, Capital Enterprise Insurance Company, the Tuggle's insurer, State Farm Insurance Company, the Thomas's uninsured motorist carrier, the State of Louisiana through the Department of Transportation and Development, and Scott E. Thomas. On June 24, 1985, Thomas compromised and dismissed all of his claims against the Tuggles and their insurer. Scott E. Thomas also filed suit against the Tuggles, Capital, State Farm, and the state. Scott Thomas's claims against the Tuggles and their insurer were also compromised and dismissed on June 24, 1985.
Mary Frances Tuggle filed suit against the state, the Claiborne Parish Police Jury, and Capital; however, her claim against Capital was eventually dismissed. Billy Phillip Tuggle filed a separate suit against the state, the Claiborne Parish Police Jury, *564 Capital, and Mary Frances Tuggle. Mr. Tuggle's claim against Capital was eventually dismissed.
All four cases were consolidated for trial. In the liability portion of the bifurcated trial, the court found the State of Louisiana, through the Department of Transportation and Development solely liable to plaintiffs. After hearing testimony and evidence in the damage portion of the trial, the trial judge made the following awards:
I. To Luby R. Thomas, individually: (1) wrongful death of wife, Barbara W. Thomas, $400,000.00; (2) economic loss of past earnings, $43,385.00; (3) economic loss of household services, $199,067.00; (4) economic loss of future earnings, $817,449.00; (5) medical specials, $100.00. Total: $1,460,001.00.
II. To Luby R. Thomas as administrator of the succession of Barbara W. Thomas: (1) survivor's action re "pre-impact" fear, $15,000.00; (2) funeral expenses, $2,506.58. Total: $17,506.58.
III. To Luby R. Thomas, as tutor of the minor, Kenneth Ray Thomas: (1) wrongful death of mother, $300,000.00; (2) bodily injury, $100,000.00; (3) medical specials, $6,889.50. Total: $406,889.50.
IV. To Scott E. Thomas: (1) wrongful death of mother, $300,000.00; (2) personal injuries, $10,000.00; (3) medical specials, $168.75. Total: $310,168.75.
V. To Mary Frances Tuggle: (1) personal injuries directly associated with the trauma of the accident, $350,000.00; (2) personal injuries related to her change in lifestyle, $200,000.00; (3) future pain and suffering, $200,000.00; (4) traumatic stress disorder, $300,000.00; (5) medical specials, $66,308.78. Total: $1,116,308.78.
VI. To Billy Phillip Tuggle: (1) loss of consortium, $300,000.00; (2) personal injuries, $50,000.00; (3) post-traumatic stress disorder, $10,000; (4) medical specials, $3,906.42. Total: $363,906.42.

ANALYSIS
The trier of fact has much discretion in awarding general damages, and his determination will not be disturbed on appeal absent an abuse of that much discretion. LSA-C.C. Art. 1934(3) (current version LSA-C.C. Art. 1999); Wilson v. Magee, 367 So.2d 314 (La.1979).
In Reck v. Stevens, 373 So.2d 498, 501 (La.1979), the Louisiana Supreme Court set forth the following two-part analysis to be used in determining the inadequacy or excessiveness of a damage award:
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion," La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries, see Coco at 341 So.2d 334. [Emphasis added.]
*565 Using the analysis set forth in Reck v. Stevens we will examine only the awards which the state complains are excessive.[1]

THOMAS AWARDS

WRONGFUL DEATH OF BARBARA THOMAS
First, we address the excessiveness of the awards of $400,000.00 to Mr. Thomas and $300,000.00 each to Kenneth Thomas and Scott Thomas for the wrongful death of Mrs. Thomas, and the award of $199,067.00 to Mr. Thomas for loss of his wife's services.
At the time of her death, Mrs. Thomas was 42 years of age and Mr. Thomas was 44 years of age. They had two boys, Scott, age 18, and Ken, age 15. Mr. Thomas was employed as a band saw operator at Riley Beaird and Mrs. Thomas was employed as a registered nurse at Willis-Knighton Hospital. In describing the Thomas family, the trial court found the following:
.... They recreated as a family and worshiped as a family. Mrs. Thomas performed the usual "housewife" duties.
The sons relied primarily upon their mother for assisting with homework. She purchased their clothing, taking the sons shopping with her for that purpose.
It would be difficult to describe a more loving, concerned, dedicated, visionary, and properly prioritized family existence than that of the Thomases. The deceased mother was an integral and essential part, personally and economically.
* * * * * *
It would be difficult to imagine a better wife than Barbara W. Thomas is shown by the evidence to have been. Mr. Thomas was, perhaps overly, dependent upon her influence on the children, especially in the religious and academic area. She was companion to him par excellence. She participated in their boat-skiing and other recreational activities as a partner and not merely as the food preparer, clean-up girl, etc. She helped create an environment in which he was so satisfied that he could turn down opportunities for advancement and higher pay. She was the mother of his only two children. It is impossible to place a true value on such a loss. She was a primary source of economic advantage and planned further specialty as an anesthetist. Her history of vision, ambition, intelligence, and determination assures that she would have accomplished her goal, except for her tragic demise.
Opinion of the trial judge, pp. 2-3.
Dr. Joe Ben Hayes, a psychiatrist who examined each member of the Thomas family, testified that Mr. Thomas's reaction to his wife's death was consistent with that of a surviving spouse who had experienced "a close and good marriage." Dr. Hayes also testified that most of the boys' reactions to their mother's death were reasonably normal under the circumstances. Furthermore, although all of the Thomases had experienced some dreams and nightmares concerning the accident, none of them suffered from any type of psychiatric disorder.
While Louisiana has not yet recognized a separate award with a specified dollar value for loss of services such as cooking, cleaning, housekeeping, and the like where there is no evidence of actual payment for the replaced services, this loss has been a consideration in determining general nonpecuniary damages in wrongful death cases. Marceleno v. State, Dept. of Highways, 367 So.2d 882 (La.App.2d Cir.1978); Diefenderfer v. Louisiana Farm Bureau Mutual Ins. Co., 383 So.2d 1032 (La.App. 1st Cir.1980), writ granted, 384 So.2d 985 (La.1980), case dismissed January 13, 1981. Therefore, we will examine together the awards to Mr. Thomas of $199,067.00 for loss of services and $400,000.00 for general damages, a total of $599,067.00.
The record is void of any evidence of actual payment for the replaced services of *566 Mrs. Thomas. Dr. Melvin Harju, plaintiffs' economist, projected past and future losses of household services to be $199,067.00 based on replacement cost figures from government studies. Dr. Harju calculated this loss on the basis of information furnished by Mr. Thomas that Mrs. Thomas engaged in household activities approximately 28 hours per week, which Dr. Harju found to be above average for a woman working outside of the home. This figure reflects a discount for present value.
Although the Thomases were a close-knit, loving family of which Mrs. Thomas was an integral part, when considered against the mass of general damage awards for the wrongful death of a wife and mother, the trial court's awards of $599,067.00 to Mr. Thomas and $300,000.00 to each of the Thomas boys are excessive. Under similar circumstances, awards for the wrongful death of a spouse range from $7,500.00 to $200,000.00, with $100,000.00 being the most frequent award closely followed by $150,000.00. In wrongful death cases involving a parent, awards to minor children have traditionally been greater than awards to major children. For example, awards to minor children range from $25,000.00 to $150,000.00, with most of those awards being at $40,000.00 and $100,000.00; awards to major children range from $20,000.00 to $75,000.00 with no specific concentration.[2]
Considered against the mass of cases involving similar losses, it is apparent that the awards in the present case to Mr. Thomas and Kenneth and Scott Thomas for the death of Mrs. Thomas are greatly disproportionate to prior awards. Having found an abuse of the trial court's "much discretion", we will reduce the awards at issue to the highest which could have been reasonably awarded. Emerson v. Empire Fire & Marine Insurance Company, 393 So.2d 691 (La.1981); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). Considering the facts of the present case and the awards made in the cases cited in Footnote 2, above, we reduce the awards to *567 the Thomases for the wrongful death of Mrs. Thomas as follows:

Luby R. Thomas $150,000.00
Kenneth Thomas $100,000.00
Scott Thomas $ 75,000.00

LOSS OF SUPPORT
Next, we examine the excessiveness of the $817,449.00 award to Mr. Thomas for loss of support. This figure was projected by Dr. Harju based on the salary of a nurse anesthetist and a 20.6 year work life. In making his calculations, Dr. Harju relied on the following factors: (1) a 5% salary increase earned by Willis-Knighton employees for the past two years; (2) a 4% inflation rate rising to 7½% over a ten year period and remaining at 7½% thereafter; (3) an economic growth rate of 2.2% based on an increase in worker productivity from 1890 through 1984; (4) a discount rate of 9.66% per year based on the current Treasury bill rates; (5) fringe benefits of 17.6%; and (6) a personal consumption factor of 35.7%.
Lost wages need not be precisely proved, but must be shown with reasonable certainty. Finley v. Bass, 478 So.2d 608 (La.App.2d Cir.1985). Speculation, probabilities, and conjecture cannot form the basis of an award for loss of future earnings. Watson v. Hartford, 339 So.2d 480 (La. App.2d Cir.1976), writ denied, 341 So.2d 1124 (La.1977); Heard v. Sanders, 223 So.2d 212 (La.App.2d Cir.1969).
The trial judge did not abuse his discretion in relying on the calculations made by Dr. Harju except to the extent that the award was based on the salary of a nurse anesthetist when Mrs. Thomas was only a registered nurse at the time of her death. Despite testimony from Mr. Thomas and co-workers of Mrs. Thomas that Mrs. Thomas intended to return to school to achieve this position when her youngest son finished high school, it was not reasonably certain that Mrs. Thomas would actually do so. Therefore, we reduce the award to reflect the salary earned by Mrs. Thomas at the time of her death which was calculated by Dr. Harju to be $507,999.00 based on the aforementioned factors. We accept this award as the highest reasonable award within the discretion of the trial court.

PRE-IMPACT FEAR
The last Thomas award to be considered for excessiveness is $15,000.00 to the estate of Mrs. Thomas for her pre-impact fear. The only evidence concerning this award of damages was testimony by Scott Thomas that when he saw the Tuggle vehicle lose control, he hit his brakes and exclaimed, "`Oh, no, mom!' she looked up and saw the car coming, and she reached over and grabbed my arm, and she gasped, which is a frequent thing that she did when she was frightened." Scott testified further that the crash took place immediately thereafter. Once he regained consciousness, Scott grabbed his mother's arm in a futile attempt to check her pulse. All other evidence indicates that Mrs. Thomas was either killed or rendered unconscious upon impact or seconds later. Because only a few seconds could possibly have elapsed between the time Mrs. Thomas realized what was happening and the time of impact, the trial judge abused his discretion in awarding $15,000.00 for pre-impact fear. The highest award within his discretion under these circumstances is $7,500.00.

TUGGLE AWARDS

MARY TUGGLE
We must now consider whether the following general damage awards to Mrs. Tuggle totaling $1,050,000.00 are excessive:

(1) Her physical injuries $350,000.00
(2) Her "change in lifestyle" $200,000.00
(3) Traumatic stress disorder $300,000.00
(4) Future pain and suffering $200,000.00

Mrs. Tuggle, age 51 at the time of the accident, was in shock upon arriving at Schumpert Hospital in Shreveport having lost approximately one-half of her blood supply due to internal hemorrhaging. She was given fluid resuscitation to bring her *568 out of shock before an exploratory laparotomy was performed to remove her spleen, which was the cause of her internal hemorrhaging. This operation left a scar approximately twelve inches long. Several hours later it was necessary to insert a chest tube to withdraw blood and air from Mrs. Tuggle's lungs. The bleeding was temporarily stopped by the chest tube, but a thoractomy, requiring an incision from her front chest to her shoulder blade, was needed to repair a leak in her left lung. During this operation, a chest wall bleeder was sutured and her ribs were fixed in an attempt to aid her flail chest (collapsing of chest while inhaling). After this surgery, Mrs. Tuggle was required to undergo very painful pulmonary therapy every four to six hours to exercise her lungs. All of these complications presented serious threats to Mrs. Tuggle's life.
As a result of the accident, Mrs. Tuggle sustained four fractured ribs and her pelvis was fractured in at least three places. She also had multiple bruises and lacerations. After approximately two and one-half months in the hospital, Mrs. Tuggle was allowed to spend two to three weeks at home before returning to the hospital for another couple of weeks to undergo walking therapy. During her hospital stay, Mrs. Tuggle was in traction. Mrs. Tuggle used a walker for about two and one-half months after her last release from the hospital until she was able to use a cane, which she required for another three to four months. Presently, Mrs. Tuggle's left leg is shorter than her right leg and she walks with a limp necessitating her to wear a shoe lift. She cannot sit, walk, or stand for long periods of time without pain. Prior to the accident, Mrs. Tuggle did all of the cooking, cleaning, sewing, gardening, and bill-paying. Even though Mrs. Tuggle can no longer garden or sew, she can cook and clean although she does so at a very slow pace.
Dr. Hayes, the psychiatrist who evaluated both Mr. and Mrs. Tuggle, testified that after his initial examination of Mrs. Tuggle, he suspected that she suffered from an organic brain disorder, depression, and post-traumatic stress disorder. Dr. Hayes referred Mrs. Tuggle to Dr. Ronald A. Goebel, Ph.D., a neuropsychologist, for a neuropsychological evaluation. Dr. Goebel found Mrs. Tuggle to be suffering from some type of a organic brain disorder, i.e. her brain did not function normally due to a physiological rather than a psychological problem. Dr. Goebel found that although the organic brain disorder could have been traumatically imposed, it was hard to pinpoint its cause due to the fact that Mrs. Tuggle had performed poorly in school. He felt that Mrs. Tuggle must have had some sort of learning disability prior to the accident; however, the accident must have compounded this pre-existing impairment, otherwise, she would have been capable of doing the things that she had done prior to the accident. Both doctors suspected that the organic brain disorder was the cause of Mrs. Tuggle's poor memory and communicative skills and irritability after the accident.
After further evaluation, Dr. Hayes found that although Mrs. Tuggle showed some symptoms of post-traumatic stress disorder, she did not have this problem. The guilt felt by one who survives an accident in which one or more other persons were killed forms a part of post-traumatic stress disorder. Although Mrs. Tuggle did have some dreams and nightmares involving trauma and violence, these nightmares occurred only for a short period of time before disappearing. Furthermore, Mrs. Tuggle understood that the collision was an accident which she could not have prevented and did not intend to happen. In Dr. Hayes's opinion, Mrs. Tuggle was an independent and dominant person before the accident, and her feelings of inadequacy, frustration, and impatience after the accident were due to her inability to care for herself and function independently.
Our conclusions regarding the awards to Mrs. Tuggle are as follows: The award of $350,000.00 for physical injuries is affirmed. See Parfait v. Dept. of Highways, 334 So.2d 549 (La.App. 1st Cir.1976) *569 which awards $346,230.00 and Gordon v. General Motors Corp., 323 So.2d 496 (La. App.3d Cir.1975) which awards $437,000.00 for similar injuries. The award of $200,000.00 for "change of lifestyle" is reversed and set aside as being a duplication of the award for future pain and suffering. Counsel for Mrs. Tuggle has not cited, nor do we find, any Louisiana case which allows an award for "change of lifestyle" separate from an award for future pain and suffering. The award of $300,000.00 for traumatic stress disorder is set aside as not being proved. Dr. Hayes testified Mrs. Tuggle did not have this diagnosis. The award of $200,000.00 for future pain and suffering is affirmed. Thus, the total awards at issue to Mrs. Tuggle are reduced from $1,050,000.00 to $550,000.00

BILLY TUGGLE
Next, we examine for excessiveness the general damage award to Billy Phillip Tuggle totalling $60,000.00, itemized as $50,000.00 for his physical injuries and $10,000.00 for post-traumatic stress disorder. The state does not in its brief seriously question the award of $50,000.00 for physical injuries. Therefore, we do not review this item.
As a result of the accident, Mr. Tuggle, who was 52 years of age, received a broken nose, a very small laceration on his upper lip, a large, swollen hematoma above his right eye, and a fractured tooth which had to be surgically removed. He also experienced tenderness of two back, left ribs and general stiffness and soreness. After four to five days, Mr. Tuggle was discharged from the hospital. He later experienced some pain in his arm and shoulder. Although a few chiropractic visits helped relieve the pain, he eventually discontinued these visits.
In his evaluation of Mr. Tuggle, Dr. Hayes, the psychiatrist, found him to be depressed. He also found some signs of a concussion or a short-term loss of consciousness and recommended that Mr. Tuggle undergo a neuropsychological evaluation. However, there is no evidence that Mr. Tuggle has done so. The record is devoid of any medical evidence that Mr. Tuggle suffers from post-traumatic stress disorder.
Due to the lack of medical evidence of post-traumatic stress disorder, we find that the trial court abused its discretion in awarding him $10,000.00 for that item. Thus, we reduce the general damage award to Mr. Tuggle to the sum of $50,000.00.

LOSS OF CONSORTIUM
Finally, we examine the award of $300,000.00 to Mr. Tuggle for loss of consortium.
In reviewing an award for loss of consortium the Third Circuit in Sharp v. Metropolitan Property and Liability Insurance Co., 478 So.2d 724 (La.App.3d Cir.1985) stated:
We recognize a need to distinguish between loss of consortium, service, and society, and the mental anguish suffered by an uninjured third party. The latter is not compensable. Definitions of these terms in a maritime context may be found in Gaspard v. Transworld Drilling Co., 468 So.2d 692, 693 (La.App.3d Cir.1985):
`Society' includes the familiar loss of consortium element, but is broader, as it also includes the general love, companionship, and affection that the spouse and other family members lose as a result of a maritime injury or death. * * *
`Services' is a monetary award designed to replace the uncompensated work, guidance, and upkeep that the injured or deceased party formerly performed for the family (household maintenance, educational help for children, etc.), which ostensibly will, as a result of the injury or death, now have to be obtained from another source and at a price.
Though "society" subsumes "loss of consortium" in this definition, we believe that the compensable elements under Article *570 2315 and under Gaspard are the same.
Since its amendment in 1982, only three cases have interpreted the provision for loss of consortium in LSA-C.C. Art. 2315. In Finley v. Bass, 478 So.2d 608 (La.App.2d Cir.1985), Mr. Finley received back and knee injuries in an intersectional collision, and the trial judge awarded $5,000.00 to Mrs. Finley for loss of consortium. On appeal, this court held that although the award to Mrs. Finley was probably on the lower end of the discretionary scale, it was not abusively low where the evidence showed a 70% decrease in sexual relations and a potential loss of material services.
In Sharp, supra, Mrs. Sharp suffered a crushed larynx and a broken leg in an automobile accident. Mr. Sharp was awarded $10,000.00 for loss of consortium. The evidence revealed that Mr. Sharp was deprived of the consortium, service, and society of his wife during her 14 week recuperation. At the time of trial, Mrs. Sharp still experienced pain in her leg restricting her ability to do housework. Mr. Sharp stated that permanent changes had occurred in their relationship. The court held that there was no abuse of discretion in the award of $10,000.00.
The only other case we find involving the loss of consortium under LSA-C.C. Art. 2315 is Harrington v. City of Abbeville, 471 So.2d 1160 (La.App.3d Cir.1985), where the plaintiff tripped and fell thereby aggravating a pre-existing back injury and his wife was awarded $7,500.00 for loss of consortium. In this case the wife testified that plaintiff was unable to perform sexually since the accident and had become difficult to live with. The appellate court found no abuse of discretion in the trial court's award.
Because the awards in the mass of similar cases range from $7,500.00 to $10,000.00, we find that the trial judge abused his discretion in granting $300,000.00 to Mr. Tuggle for loss of consortium. Therefore, this award must be reduced.
Mr. and Mrs. Tuggle were married at the ages of 17 and 16, respectively. They have four children, the youngest of whom lives with them. Mrs. Tuggle testified that despite the fact that she still loves her husband, their relationship is not the same as evidenced by the fact that she often wants to be left alone. Mr. Tuggle testified that he and his wife are closer after the accident as far as being together and loving each other but are unable to engage in sexual relations as they did before the accident. Although it was necessary for Mr. Tuggle to perform all of the household activities during Mrs. Tuggle's convalescence, Mrs. Tuggle is now able, although slowly, to perform most of those services.
Due to Mrs. Tuggle's lengthy recuperation and subsequent personality change and her inability to function sexually, we award to Mr. Tuggle $20,000.00 for loss of consortium, an award which we consider to be the highest reasonably within the discretion of the trial court.

DECREE
For the reasons assigned, the judgment appealed is amended to reflect the following damage awards:
I. To Luby R. Thomas, individually: (1) wrongful death of wife, Barbara W. Thomas, $150,000.00; (2) economic loss of past earnings, $43,385.00; (3) economic loss of future earnings, $507,999.00; (4) medical specials, $100.00. Total: $701,484.00.
II. To Luby R. Thomas as administrator of the succession of Barbara W. Thomas: (1) survivor's action re "pre-impact" fear, $7,500.00; (2) funeral expenses, $2,506.58. Total: $10,006.58.
III. To Luby R. Thomas, as tutor of the minor, Kenneth Ray Thomas: (1) wrongful death of mother, $100,000.00; (2) bodily injury, $100,000.00; (3) medical specials, $6,889.50. Total: $206,889.50.
IV. To Scott E. Thomas: (1) wrongful death of mother, $75,000.00; (2) personal injuries, $10,000.00; (3) *571 medical specials, $168.75. Total: $85,168.75.
V. To Mary Frances Tuggle: (1) physical injuries, $350,000; (2) future pain and suffering, $200,000.00; (3) medical specials, $66,303.00. Total: $616,303.00.
VI. To Billy Phillips Tuggle: (1) personal injuries, $50,000.00; (2) loss of consortium, $20,000.00; (3) medical specials, $3,906.42. Total: $73,906.42.
Otherwise than as amended, the judgment appealed is affirmed. All costs of appeal are assessed against the defendant-appellant.
AFFIRMED AS AMENDED.
NOTES
[1] See Weissbohn v. Gulf Ins. Co., 392 So.2d 752 (La.App.3d Cir.1980) in which the court considered the "mass" of prior awards in similar cases to determine that the trial court's award was excessive.
[2] Fisher v. Walters, 428 So.2d 431 (La.1983): $100,000.00 to wife and $40,000.00 to each of six minor children;

Cheatham v. City of New Orleans, 378 So.2d 369 (La.1980): $200,000.00 to wife and $125,000.00 to minor child;
Davis v. Owen, 368 So.2d 1052 (La.1979): $7,500 to wife;
Dotson v. Matthews, 480 So.2d 860 (La.App.2d Cir.1985): $150,000.00 to husband and $100,000.00 to each of two minor children (awards made by appellate court);
Brandon v. State, Through Dept. of Highways, 367 So.2d 137 (La.App.2d Cir.1979), writ denied, 369 So.2d 141 (La.1979): $100,000.00 to wife and $40,000.00 to each of two minor children;
Pierron v. Lirette, 468 So.2d 1305 (La.App. 1st Cir.1985): $100,000.00 to wife (increased from $60,000.00);
Duvernay v. State, Through Dept. of Public Safety, 433 So.2d 254 (La.App. 1st Cir.1983): $150,000.00 to wife and $75,000.00 to each minor child;
Raymond Through Raymond v. Deaton, 423 So.2d 724 (La.App. 1st Cir.1982): $25,000.00 to each of two minor children;
Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La.App.3d Cir.1984), writ denied, 457 So.2d 1195 and 457 So.2d 1198 (La.1984): $150,000.00 each to the wives of two victims and $100,000.00 to each minor child;
Meche v. Gulf States Utilities Co., 444 So.2d 137 (La.App.3d Cir.1983); $100,000.00 to wife and $100,000.00 to minor child (award made by appellate court);
Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App.3d Cir.1983), writ denied, 443 So.2d 591 (La.1983): $50,000.00 to husband and $100,000.00 to minor child (appellate court "harmonized" differing verdicts by the judge and the jury);
Rivet v. State, Through Dept. of Transp., 434 So.2d 436 (La.App.3d Cir.1983): $35,000.00 to each of three major children;
Estate of King v. Aetna Cas. & Surety Co., 427 So.2d 902 (La.App.3d Cir.1983), writ denied, 433 So.2d 1048 (La.1983): $150,000.00 to minor child, $50,000.00 to each of four major children, and $75,000.00 to each of two major children;
Faulk v. Schlumberger Well Services, 412 So.2d 162 (La.App.3d Cir.1982): $100,000.00 to wife and $40,000.00 to each minor child;
Hardy v. State, Through Dept. of Highways, 404 So.2d 981 (La.App. 3d Cir.1981): $100,000.00 to wife and $40,000.00 to each of two minor children; and
LeJeune v. Allstate, Ins. Co., 373 So.2d 212 (La.App. 3d Cir.1979): $50,000.00 to wife (increased from $25,000.00), $30,000.00 to minor son (increased from $12,500.00), and $20,000.00 to each of three major children (increased from $7,500.00 each).