558 So.2d 1177 (1990)
Willie M. BROOKS, Jr., Individually and as Natural Tutor of the Estates of his Minor Children, Bryant J. Brooks, Roger Brooks, Willie M. Brooks, III, and Brandon Lamar Brooks; Kenneth Anio and Sharon Denise Brooks
v.
CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE, et al.
No. CA 89 0021.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
Rehearing Denied April 25, 1990.
*1178 Paul Due, Baton Rouge, Johnny Matthews, Baton Rouge, for plaintiffs-appellees Willie Brooks, et al.
William Cleveland, Slaughter, for plaintiff-appellee Zurich Ins. Co.
Boris Navratil, John Heinrich, Baton Rouge, for defendant-appellant Fidelity and Cas. Co. of New York.
Frank Gremillion, Baton Rouge, for defendants-appellants City of Baton Rouge, Parish of East Baton Rouge.
John David Ziober, Baton Rouge, William Porteous, III, New Orleans, for defendant-appellant Chicago Ins. Co.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
LOTTINGER, Judge.
This is a wrongful death action brought by the decedent's husband, Willie Brooks, Jr., on his own behalf and on behalf of his minor children, Bryant J. Brooks, Roger Brooks, Willie Brooks, III, and Brandon Brooks. Also included as plaintiffs are the decedent's major children, Kenneth Anio and Sharon Denise Brooks. The defendants in this action are the City of Baton Rouge/Parish of East Baton Rouge (City/Parish), its insurers, The Fidelity & Casualty Company of New York and Chicago Insurance Company, Barber Brothers Contracting Company, Inc. and Bobby Golman, Jr. Barber Brothers Contracting Company, Inc. and Bobby Golman, Jr. were dismissed on summary judgment, and the case proceeded to trial against the City/Parish and its insurers. The trial court found the City/Parish responsible for the death. The City/Parish and its insurers now appeal the apportionment of fault and the quantum.

*1179 FACTS
On January 2, 1985, at about 8:20 A.M., Mrs. Dorothy Mae Brooks was operating her automobile in a southerly direction on O'Neal Lane in Baton Rouge. At the same time, Elizabeth Ferrara was operating her automobile in a northerly direction on O'Neal Lane. For some unknown reason the right wheels of the Brooks vehicle drifted off the roadway for approximately six inches before Mrs. Brooks instinctively oversteered her automobile to get it back onto the roadway. In the attempt to return the vehicle to the highway, Mrs. Brooks obviously loss control, crossed the center line of the highway, and was broadsided by the Ferrara vehicle. Mrs. Brooks died as a result of this accident.
O'Neal Lane had been recently overlaid and was freshly striped. Though the overlay job was contracted out on a public contract, the shoulder work was done by City/Parish employees. In constructing the shoulder at the site of the accident, a size No. 57 limestone aggregate was utilized rather than a size No. 610. The experts agreed that the size No. 610 was the better aggregate for shoulder surfacing because of the compaction ability. A depression of from 3¼ inches to 3 7/8 inches developed along the edge of the roadway at the site where the Brooks' car left the roadway. The shoulder along O'Neal Lane was straight and had no obstructions except a mail box some distance away. It had been raining earlier and the road was wet.

ASSIGNMENTS OF ERROR
The defendants contend that the trial court erred in:
(1) holding that the negligence of Mrs. Brooks accounted for only 15 percent of the causation of the accident.
(2) awarding the plaintiffs a grossly excessive damage award which is unsupported by the evidence at trial and contrary to law.

ASSIGNMENT OF ERROR NO. 1
The trial court found Mrs. Brooks 15 percent at fault and the defendants 85 percent at fault for their respective contributions to the accident. The defendants now appeal this apportionment.
The percentage allocation of fault in a comparative negligence case is a question of fact. Motton v. Travelers Insurance Company, 484 So.2d 816 (La.App. 1st Cir. 1986); Gilder v. Branton, 471 So.2d 976 (La.App. 1st Cir.1985). As any other question of fact, it should not be disturbed in the absence of manifest error on the part of the trier of fact. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985) the Supreme Court indicated which factors should be considered in order to apportion fault under a system of comparative fault:
"In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. [Quoting Uniform Comparative Fault Act 2(b) (1979).] In assessing the nature of the conduct of the parties various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought. And of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Mrs. Brooks committed two acts of negligence: her inattention which caused her to leave the roadway, and her improper attempt to regain the paved portion of the highway before reducing speed. She should have perceived the great risk of attempting to reenter the roadway at speed. There was no need for her to proceed *1180 in such a hasty fashion. The roadway was straight and there were no obstructions in Mrs. Brooks' path which required her to return immediately to the paved portion of the roadway. The accident occurred during the day, and thus visibility was not limited as it might have been at night. There was no evidence of any emergency situation requiring her to proceed with haste and without proper thought. She traveled the road daily and therefore was very familiar with the road. The only factor tending to lessen her percentage of fault is the fact that her conduct was described as inadvertent or instinctive.
On the other hand, the City/Parish constructed the shoulder with a No. 57 limestone aggregate rather than the normally used No. 610 resulting in a less stable shoulder. This shoulder contained a two and one half to three and one half inch drop which the trial court concluded was defective. The No. 57 limestone aggregate was used for approximately 40 feet along the shoulder.
Plaintiffs argue that in LeBlanc v. State, 419 So.2d 853 (La.1982), when faced with a similar instinctive reaction, the court said:
"the natural instinct of an ordinary driver, without prior warning or specific training, is to attempt to regain immediate entry onto the highway, thereby creating a risk of loss of control. Because a substantial percentage, if not a majority, of ordinary drivers encountering an unexpected four to six inch descent upon inadvertently deviating slightly from the roadway would react instinctively as Mrs. LeBlanc did, the legal duty of the Department to maintain safe highway shoulders is imposed to protect against this risk."
(419 So.2d at 856).
However, we note that in Pitre v. Aetna Insurance Company, 456 So.2d 626 (La. 1984), though the driver traveled 300 feet on the shoulder of the road before striking a bridge guardrail, the Supreme Court said:
"Prudent behavior for a motorist who inadvertently drives off the paved roadway onto the shoulder is first to reduce speed and then to attempt a gradual reentry after he has regained control of the vehicle."
(456 So.2d at 629).
Plaintiffs would suggest that Pitre is distinguishable because the driver traveled on the shoulder for some distance before striking the guardrail. But, the Supreme Court said that the first thing an inadvertent driver who goes off the paved roadway is to do is reduce speed, not instinctively jerk the steering wheel to bring the vehicle back on the highway.
Thus, under the facts and circumstances as examined above, we conclude that the trial court was manifestly erroneous in finding that Mrs. Brooks was only 15 percent at fault.[1] The trial court should have allocated to Mrs. Brooks 50 percent of the fault. Cashio v. State of Louisiana through the Department of Transportation and Development, 518 So.2d 1063 (La. App. 1st Cir.1987). Motton v. Travelers *1181 Insurance Company, 484 So.2d 816 (La. App. 1st Cir.1986); Efferson v. State Department of Transportation and Development, 463 So.2d 1342 (La.App. 1st Cir. 1984), writs denied, 465 So.2d 722 (La. 1985).

ASSIGNMENT OF ERROR NO. 2
The defendants next assign error to the quantum awarded by the trial court. Damages awarded by the trial court are as follows:

Willie Brooks (husband)
 Past loss of income $ 30,643
 Future loss of income $ 153,600
 General Damages $ 200,000
 Loss of past and future services $ 95,000
Kenneth Anio (major son)
 General Damages $ 200,000
Sharon Brooks (major daughter)
 General Damages $ 225,000
Bryant Brooks (age 16)
 General Damages $ 250,000
Willie Brooks, III (age 11)
 General Damages $ 275,000
Roger Brooks (age 12)
 General Damages $ 275,000
Brandon Brooks (age 3)
 General Damages $ 335,000
 __________
 TOTAL $2,039,243

In order to disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). An abuse of discretion is only found when the award is so excessively high or low as to shock a reviewing court into the realization that it must correct the award. Hanzy v. Sam, 385 So.2d 355 (La. App. 1st Cir.), writ denied, 386 So.2d 357 (La.1980). If an appellate court finds an abuse of discretion and that an award should be raised or lowered, it can only raise or lower the award to the highest or lowest point which would have been within the trial court's discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976).
In his reasons for judgment, the trial judge complains of arbitrariness on the part of the Louisiana courts of Appeal in reducing awards. The trial judge said:
"We are called upon to decide what economic value to assign to a wife and a mother. Interestingly enough, Civil Code Article 2324.1 says, on the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury. Every time the jury exercises its discretion in a wrongful death case, the Court of Appeals decides that it's an abuse of discretion. All the jury verdicts are pretty much consistent in that they consistently hold thatthe Court of Appeals awards half of what all the juries think would be adequate. Somehow the Court of Appeals has put an arbitrary cap, completely ignoring Article 2324.1."
What the trial judge has failed to realize or understand is that the intermediate appellate courts of this state review quantum awards in personal injury cases pursuant to the standards enunicated by the Louisiana Supreme Court and in furtherance of their constitutional role under Art. V, § 10 of the Louisiana Constitution. Utilizing that authority and in keeping with those standards, we now proceed to determine whether the trial judge abused that discretion granted him by La. Civ.Code art. 2324.1.
The defendants complain that a lesser wage rate, as well as a higher personal consumption rate, should have been used by the trial court when computing past and future loss of income. After a thorough review of the record we conclude that the fact and expert testimony support the award for loss of past wages. With respect to future income the expert's testimony at trial revealed a possible range of $94,216 to $157,369. The trial court's $153,000 award is within this reasonable range, and thus the court did not abuse its discretion.
Further, the only expert testimony at trial revealed that low income families spend a greater percentage of their take home pay on the necessities for the family than more affluent families. He assigned a personal consumption rate of 15 percent. The trial court adopted this figure, and we cannot say that under the facts of this case that it abused its discretion.
*1182 The defendants also complain of the general damage awards to the plaintiffs. The trial court awarded to the decedent's husband $200,000 in general damages and $95,000 for the loss of household services. The value of household services is simply a factor to be considered in awarding general damages for the loss of a spouse. Diefenderfer v. Louisiana Farm Bureau Mutual Insurance Company, 383 So.2d 1032 (La.App. 1st Cir.), writs granted, 384 So.2d 985 (La.1980). Thomas v. State Farm Insurance Co., 499 So.2d 562 (La.App. 2nd Cir.1986), writ denied, 501 So.2d 213, 215 (La.1987). Therefore, the basic question is whether a general damage award of $295,000 is so high as to shock the conscience of this court. The testimony established that Mr. and Mrs. Brooks were close and happily married. Mrs. Brooks provided services around the home in addition to her work outside the home. Although the award is high, it is not so high that we are shocked into changing it.
However, under the facts and circumstances of this case the awards to the children are of such a nature that this court cannot possibly leave them untouched. Although the family was close, they were not exceptionally close. They got together on holidays and occasionally went to the movies. They all testified that they missed the mother greatly, but there was no testimony that the family sustained any unusual or extreme psychological or emotional problems as a result of her death. There is nothing in the record to justify the extremely generous awards given by the trial court.
According to Reck once this court has made a determination that an award is excessive it can turn to other cases to determine what is the highest award which can be made. In reviewing these cases we must keep in mind that minor children have traditionally been given higher awards than major children. Thomas v. State Farm Insurance Co., Id.
In Thomas, the court makes an extensive review of the general damage awards in death cases. The court stated that the awards to minor children range from $25,000 to $150,000 and the awards to major children range from $20,000 to $75,000. However, other cases since Thomas reveal awards higher than the ranges observed by the Thomas court. In Mergen v. Piper Aircraft Corp., 524 So.2d 1348 (La.App. 1st Cir.1988), writs denied, 532 So.2d 154, 155, 156 (La.1989), this court awarded $100,000 to a major child and $125,000 to the minor child of the decedent. In Hellmers v. Department of Transportation and Development, 503 So.2d 174 (La.App. 4th Cir.), writs denied, 505 So.2d 1141, 1149 (La.1987), the court of appeal affirmed awards of $225,000 per child for each of three minor children for the wrongful death of their mother. In Ingram v. Caterpillar Machinery Corporation, 535 So.2d 723 (La.1988), the Supreme Court held that an award of $100,000 to $150,000 for each of the minor children and an award of $200,000 to $300,000 to the widow was not an abuse of discretion.
The trial court awarded $200,000 to Kenneth Anio the major son of Mrs. Brooks. He was married, with one child and living on his own at the time of his mother's death. In fact, he had moved from the family home and began living with his grandmother before his majority. Under these circumstances the highest award that could be given to Kenneth is $100,000. The major daughter living at home, Sharon, received $225,000. The most she could receive is $150,000.
The four minor children of Mrs. Brooks, Bryant, Roger, Willie and Brandon received $250,000, $275,000, $275,000, and $335,000 respectively. All of these awards are on the high side. However, the only one which must be adjusted is the award to Brandon Brooks of $335,000. Although Brandon was but 3 years of age at the time of the accident and will suffer the greatest loss of nurturing, guidance and other services throughout his lifetime, the award to him must be lowered to $275,000.
Therefore, the trial court is reversed in its apportionment of fault and in its general damage award as indicated above and affirmed in all other respects. Mrs. Brooks is adjudged to be 50 percent at fault and *1183 the City/Parish is 50 percent at fault, and the awards should be reduced accordingly. The awards to the children Kenneth Anio, Sharon Brooks, Brandon Brooks are hereby lowered to $100,000, $150,000, and $275,000 respectively. Costs of this appeal are assessed against plaintiffs-appellees.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
LeBLANC, J., concurs in the majority's allocation of fault, Concurs in the quantum awards with the exception of the awards to Bryant, Roger, Willie and Brandon and Dissents from the majority's opinion to the extent that I find the awards to Bryant, Roger, Willie and Brandon are excessive.
NOTES
[1] We reach the conclusion the trial judge was manifestly erroneous because of his flawed reasoning in comparing the resulting death of Mrs. Brooks to a death penalty for riding on the shoulder. Additionally, the trial judge also erroneously elevated a simple act of negligence on the part of City/Parish to an intentional tort. In his reasons for judgment, the trial judge said:

"When I consider thatin three years on the Criminal Court, the fine for straying from the lane of traffic is thirty-five dollars. If you drive on the shoulder when you're not supposed to, the fine is thirty-five dollars. There is no death penalty for riding on the shoulder. When we look at whether the conduct resulted from inadvertence or involved an awareness of danger, according to the City/Parish employee responsible for shoulders of the road, the City/Parish made a conscious decision to overlay O'Neal Lane and not bid out the shoulders to save money. Apparently somebody, he does not know who, made a clear, conscious decision to use an aggregate referred to as `57' which won't bind instead of an aggregate referred to as `610' which would bind and create a safe shoulder. After making the decision not to construct a safe shoulder and then not to maintain the shoulder in a safe manner, the City/Parish failed to put a sign on the shoulder or something to bring to the public's attention that they (1) did not intend to build a safe shoulder; (2) did not intend to maintain a safe shoulder; and (3) did not warn the public that they did not build a safe shoulder, did not intend to maintain a safe shoulder."